JAMES J. BARRY *vs.* BAY STATE STREET RAILWAY COMPANY.

Suffolk.   November 10, 1915. — January 7, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Workmen's Compensation Act,* Waiver of provisions by employee, Compromise agreement, Jurisdiction of Industrial Accident Board, Election.  *Estoppel. Evidence,* Presumptions and burden of proof.  *Waiver.  Notice.  Fraud. Jurisdiction.*

An employee of a subscriber under the workmen's compensation act, who at the time of an injury received by him in the course of his employment had not given the notice required by St. 1911, c. 751, Part I, § 5, in order that he should not come under its provisions, is subject to the act although his failure to give the notice was due to the fact that he "did not know there was such a thing as the workingmen's compensation law."

Where, in an action against a street railway company for personal injuries received by the driver of a team which was run into by a street car of the defendant, the defendant alleges and proves that the plaintiff was subject to the provisions of the workmen's compensation act and under St. 1911, c. 751, Part III, § 4, as amended by St. 1912, c. 571, § 9, had made with the company insuring his employer an agreement in regard to compensation which had been approved by the Industrial Accident Board and had received full payment as provided by the agreement, the plaintiff, in order to show that he is not precluded from prosecuting his action by the provision of St. 1911, c. 751, Part III, § 15, to the effect that under such circumstances he could not both receive compensation under the act from his employer and also proceed at law against the defendant, may show that, although the agreement which was approved by the board was signed by him, his signature was procured by such false representations that it was void and was not an election under St. 1911, c. 751, Part III, § 15, so that the board had no jurisdiction to approve it under the amended § 4.

If an employee, who was subject to the provisions of the workmen's compensation act and was able to read readily, at the suggestion of his employer's paymaster signed, when he was not under such physical disability that he was unable to comprehend the transaction, an agreement with the insured as to compensation for an injury received by him due to a collision of a team which he was driving with a street railway car, and the agreement had printed upon its face that it was subject to the provisions of the workmen's compensation

act and afterwards was signed by the insurer and under St. 1911, c. 751, Part III, § 4, as amended by St. 1912, c. 571, § 9, was approved by the Industrial Accident Board; and if such employee also received all payments in accordance with the agreement and signed each week a receipt stating that the payment was made subject to the workmen's compensation act, and a final receipt which stated that it was in settlement of compensation under the act "for all injuries" received by him in the collision, such employee is estopped to deny the validity of such agreement and settlement on the ground that it was procured from him through false representations as to its effect, made by his employer's paymaster, where it does not appear that the paymaster was acting under the authority of the insurer or that his acts were known to the insurer when the insurer signed the agreement.

TORT for personal injuries received on July 27, 1912, when a wagon which the plaintiff, an employee of the Walworth Manufacturing Company, was driving was run into by a street railway car operated by the defendant. Writ dated August 26, 1912.

In the Superior Court the case was tried before *Brown,* J. The plaintiff introduced sufficient evidence to warrant a submission of the case to the jury on the questions whether the plaintiff was in the exercise of due care and whether the defendant's servants were negligent.

The defendant introduced in evidence an instrument dated August 12, 1912, and signed by the plaintiff and "The American Liability Insurance Company, by Russell Gray, Presidt.," and approved by the Industrial Accident Board on October 29, 1912. Material portions of this agreement, with the same use of capital letters as in the original, were as follows:

"Date Aug. 12, 1912.            Workmen's Compensation Act.

"Every agreement in regard to compensation under this act is subject to approval by the Industrial Accident Board, and a memorandum of the same must be filed with the Board, whether said agreement is written or oral, and whether it is made by one or both parties, or in the form of a receipt. Any weekly payment or settlement under the act, whether purporting to be final or otherwise, may be reviewed by the Board. (Section 20, Part II., and sections 4 and 12, Part III., Chapter 751 of the Acts of 1911, and amendments thereto, and Rule No. 6 adopted by the Board.)

"James J. Barry                              Employee.

"THE AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Insurer.

## "AGREEMENT IN REGARD TO COMPENSATION.

"We, James J. Barry residing at 602 Third Street city or town of South Boston and THE AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, have reached an agreement in regard to compensation for the injury sustained by said employee while in the employ of the Walworth Manufacturing Company. [Here follow details of the accident and injury.]

"The terms of the agreement follow:

"Compensation at rate of one half of average weekly earnings during total incapacity, beginning fifteenth day after injury."

It also appeared that the plaintiff had been paid $7.50 each week from August 12 to September 29, and at the time of each payment had signed a receipt in the following form:

## "RECEIPT ON ACCOUNT OF COMPENSATION.

"Received of the AMERICAN MUTUAL LIABILITY INSURANCE COMPANY of Boston the sum of Seven dollars and 50 cents, being the proportion of my weekly wages for the period from . . . to . . . under the Massachusetts Workmen's Compensation Act, subject to review by the Industrial Accident Board. [Here followed the signature and address.]

                                   "Workmen's Compensation Act.

"Every agreement in regard to compensation under this act is subject to approval by the Industrial Accident Board, and a memorandum of the same must be filed with the Board, whether said agreement is written or oral, and whether it is made by one or both parties, or in the form of a receipt. Any weekly payment or settlement under the act, whether purporting to be final or otherwise, may be reviewed by the Board (Section 20, Part II and Sections 4 and 12, Part III, Chapter 751, of the Acts of 1911 and amendments thereto, and rule No. 6 adopted by the Board)."

On October 10, 1912, the plaintiff signed a receipt similar in every particular to the foregoing, except that it stated that the period therein described was a period "including final day of disability," that the sum then paid made "in all, with weekly pay-

ments received by me, the sum total of Fifty-two dollars and 50 cents, in settlement of compensation under the Massachusetts Workmen's Compensation Act, for all injuries received by me on or about the 27th day of July, 1912, while in the employ of Walworth Manufacturing Co., First & O Sts., South Boston, Mass."

The plaintiff contended and introduced evidence tending to show that his signature to the agreement in regard to compensation was procured when he was interviewed at his home by one Watt, the paymaster of the Walworth Manufacturing Company; that over three weeks before that interview he had placed his claim against the defendant in the hands of an attorney who had had some correspondence and negotiations with the claim agent of the defendant; that at the time of his interview with Watt, he, the plaintiff, "did not know there was such a thing as the workingmen's compensation law;" that when Watt "came down with the pay to me he said, 'Hello, Jim, I am sorry you got hurt.' He said, 'I have got a little money for you.' I said, 'That's good, Fred.' I said, 'Don't you know I have got a case against the Bay State Railroad?' And he said, 'That ain't got nothing to do with the case at all,' he said. I said, 'That's all right,' I said, 'but, Fred,' I said, 'if it has got anything to do at all in the line of prejudicing my case I don't want the money.' He said, 'It has got nothing at all to do with your case.' He said, 'Simply sign that and it is all O. K.' I signed it and simply took the money. . . . He told me, he said, 'You are working for Walworth quite a while and they are giving you this as a little gift to help you along while you are loafing.'" The plaintiff also testified that he signed all of the receipts without reading the printed matter upon them.

From the cross-examination it appeared that he could read without hesitation all that was on the exhibits; that he may have noticed what was on the agreement when he signed it, but that he did not read it.

The testimony of Watt tended to controvert that of the plaintiff. There was no evidence that Watt was in any way authorized to act in behalf of the insurer or that its officers had been informed of what had taken place when its president signed the agreement.

At the close of the evidence the defendant, among other requests, asked for a ruling that upon all the evidence the plaintiff was not entitled to recover. The ruling was refused. There was a

verdict for the plaintiff in the sum of $1,500; and the defendant alleged exceptions.

*H. F. Hurlburt, Jr.,* for the defendant.

*F. J. Daggett, (J. T. Cassidy* with him,) for the plaintiff.

BRALEY, J. The St. of 1911, c. 751, had been in force for nearly sixty days before the accident, and although the plaintiff testified that he never had heard of the enactment, he cannot successfully set up his ignorance in bar of the enforcement of its provisions. *Mulvey* v. *Boston,* 197 Mass. 178, 182, 184. See Story Eq. Jur. (13th ed.) § 111. It was undisputed that his employer was a subscriber and that no notice under Part I, § 5, of the employee's intention to rely on his rights at common law had been given. The plaintiff's personal injuries having arisen out of and been received in the course of his employment he had accordingly a claim for compensation to be determined by the Industrial Accident Board. But as the exceptions recite that sufficient evidence was introduced to warrant the jury in finding his due care and negligence of the defendant, the plaintiff under Part III, § 15, either could sue the defendant for damages or ask for compensation, but could not recover both. If compensation is accepted the association or insurer is subrogated to the rights of the injured employee. *Turnquist* v. *Hannon,* 219 Mass. 560. It is at this point that the controversy begins.

The statute recognizes and provides for agreements in settlement of injuries between the association and the employee if entered into in accordance with the terms of the act. St. 1911, c. 751, Part III, § 15; Part III, § 4, as amended by St. 1912, c. 571, § 9; Part V, §§ 2, 3. *Pigeon's Case,* 216 Mass. 51, 56. *Cripps's Case,* 216 Mass. 586, 588.

The plaintiff and the insurer signed and filed with the board fourteen days before the date of the writ a memorandum of the agreement in question, which on its face became enforceable under the provisions of Part III, § 11, providing for an appeal and report to this court on questions of law. St. 1912, c. 571, § 9. While the purpose of the statute undoubtedly is to give to the memorandum the same force and effect as a decision of the board, which is reversible only on appeal and is not open to collateral attack, yet the question before us being whether the plaintiff, upon whom alone the right is conferred, elected to accept compensation instead of

damages, he may show there was no election because the board had no jurisdiction unless he joined in the settlement. *Holman* v. *Updike,* 208 Mass. 466. See *Whitwell* v. *Bartlett,* 211 Mass. 238, 241.

The defendant having pleaded the settlement, the plaintiff seeks to avoid it on the ground that his signature was procured through the false representations of one Watt, the paymaster of the subscriber, who assured him in substance, that his right of action against the defendant would not be affected by the agreement. It is unnecessary to decide whether the statements of Watt as testified to by the plaintiff could be found by the jury to have been fraudulent. The agreement was subsequently executed by the insurer acting by its president, and there is no evidence that Watt was authorized to act in its behalf in procuring the plaintiff's signature or that its officers had been informed of what took place when the signature was affixed. It is conceded that the plaintiff is not illiterate, and the printed agreement as well as the five receipts for weekly payments contained the statement that it was made under the "workmen's compensation act" with full reference to the statute. Nor does he contend that his signature to the receipts, or to the final payment in "settlement of compensation," were obtained by misrepresentation, or that he had no opportunity to read them before signing, or was under such physical disability that he did not comprehend the transactions. If he had expressly stated or made known to the insurer that the agreement and receipts were given "without prejudice," as was found to be the fact in *Oliver* v. *Nautilus Steam Shipping Co.* [1903] 2 K. B. 639, upon which he places much reliance, the insurer would have paid with notice that the employee claimed and understood the right of election had been reserved. The right, however, under our statute is exercised when with the approval of the board a settlement is made and compensation thereunder is received during disability. The remedies cannot be pursued concurrently and the choice postponed until judgment has been recovered and then upon tender to the insurer of |the amount received the employee collects the judgment. St. 1911, c. 751, Part III, § 15. The plaintiff, who upon his own evidence was bound to know the contents of all 'the papers after the first, signed without protest, remained silent, and did not expressly

repudiate the settlement until the coming in of the answer. He, moreover, availed himself of the benefits during disability, which seems to have terminated with the final payment made forty-five days after the present action was brought. We are unable under such circumstances to accede to his contention, that the jury were to decide whether he was precluded by the proceedings. The rules of law applicable to executed contracts and to the doctrine of equitable .estoppel have not been abrogated, and the insurer, having acted in good faith and fully complied with the requirements of the statute, should not be deprived of its rights. *Grace* v. *Adams,* 100 Mass. 505, 507. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553, 555. *O'Regan* v. *Cunard Steamship Co.* 160 Mass. 356, 361. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563. *Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170. The action cannot be maintained for the plaintiff's sole personal benefit, and the defendant's first request that upon all the evidence the plaintiff is not entitled to recover should have been given.

*Exceptions sustained.*