Sylvia Ruth Bolin v. Swift & Company, a Corporation, Employer, Security Mutual Casualty Company, a Corporation, Insurer, Appellants.—73 S. W. (2d) 774.

Division One, July 17, 1934.

*Brown, Douglas & Brown* for appellants.

*Randolph & Randolph* for respondent.

HYDE, C.—This case, coming recently to the writer, is an appeal by an employer and its insurer from an order of the Circuit Court of Buchanan County affirming an award of the Workmen's Compensation Commission. The award was made for the death of William M. Bolin, an employee of Swift & Company, to his widow until prior death or remarriage, then the unpaid remainder to his two children, four and fifteen years of age. The award was for a total of $7796, being $150 burial expenses and $20 per week for 382.3 weeks.

Claimant's evidence was to the effect that Bolin was employed by Swift & Company at St. Joseph, Missouri, as a traveling salesman in December, 1923; that he had previously worked for Swift & Company, but had for a year prior to his last employment been working for Sinclair Oil Company at Norton, Kansas. He had come to St. Joseph with his family for the Christmas holidays at the time he entered into his contract of employment, which was a verbal contract. St. Joseph was his wife's former home but it is not definitely shown whether he had previously lived there. For the first week of his employment, Bolin remained in the St. Joseph plant of Swift & Company to familiarize himself with their products which he was to sell to merchants. In the latter part of December, 1923, he went with his family to Centerville, Iowa, which was centrally located in the territory he was to travel over, and continuously lived there until his death on March 7, 1932. He paid poll taxes there and voted there. Bolin's letters of instruction, and correspondence about his territory, came from the St. Joseph office of Swift & Company. He made his reports there and sent his remittances, for collections from his territory, there. His accounts were kept there. His pay checks came from the St. Joseph office. He was called to sales meetings in St. Joseph. Goods and samples were shipped to him from St. Joseph. Swift & Company also had a produce plant at Centerville, Iowa. When Bolin sold produce in his territory, it was shipped to his customers from this Centerville plant. Orders for other merchandise, which he sold in his territory, were filled and shipped to his customers from the St. Joseph plant. Bolin's territory was partly in Iowa and partly in Missouri. He was furnished a Chevrolet coupe by Swift & Company to make his trips. He kept this car in a small garage at his residence in Centerville. Twice a week he made trips into Mis-

souri. One of these trips was to the towns of Unionville, Lemon, Poling and Mendota. The other Missouri trip was to Downing, Lancaster, Glenwood and Memphis.

On the morning of March 7, 1932, Bolin got up about six o'clock, fixed the fire in the furnace at his residence, and went out to the garage. It was a cold, blustery, windy morning. Sometime later his wife saw smoke coming through the closed garage doors, went there, and found him dead from carbon monoxide poisoning. The motor of the car was still running and, according to claimant's testimony, he was lying on the opposite side of the car, from that upon which the exhaust pipe was located, with his face toward the door. There was evidence that the garage doors blew shut easily and there was also evidence that they dragged on the ground so that it was difficult to shut them. Appellants had evidence that there was a shortage of $1173.14 in Bolin's accounts and that another salesman from Swift & Company was in Centerville that morning to go over his territory with him. Claimant said that Bolin often carried his customer's accounts when they could not pay; that he was optomistic about conditions; that there had been no change in his actions, attitude or manner; and that he told her, when he left, to arrange to have the visiting salesman to dinner the next evening. Appellants also had evidence that it would take from one-half hour to one hour to cause death from carbon monoxide poisoning from the ordinary idling of an automobile engine in a small garage. It was admitted, however, that the time would be less if the engine was running faster.

The defenses made by appellants were that Bolin came to his death by suicide instead of by an accident arising out of and in the course of his employment; and that if his death was due to an accident the Compensation Act of the State of Iowa would apply instead of the Missouri Act. The commission found that both the employer and the employee had accepted the Missouri Act; "that William M. Bolin, deceased, was on March 7, 1932, fatally injured by accident arising out of and in the course of his employment with Swift & Company; that deceased's contract of employment with Swift & Company was made in St. Joseph, Missouri; that he was employed as a traveling salesman and that a part of his territory lay in Iowa and a part in Missouri." The commission ruled "that since his contract of employment was made in Missouri this Commission has jurisdiction to hear this claim and award compensation to the dependents of deceased."

Appellants thereafter applied for review and upon hearing before the full commission the award was affirmed. Appellants then appealed to the circuit court which likewise affirmed the award. After the proceeding was lodged in the circuit court by appeal appellants filed petition for removal to the Federal Court on the ground of diversity of citizenship, alleging that appellants were Illinois cor-

porations and that claimant was a resident of St. Joseph, Missouri. Appellants assign as error the court's action in refusing to grant the application. It has been held that, because the Missouri Workmen's Compensation Act is contractual and elective, when an employer seeks the benefit arising from its limitations on the amount of individual recovery and from speedy adjustment and settlement, by accepting it; invokes the aid of the State's administrative tribunal, upon failure to agree with the employee or claimant; and, when dissatisfied with its award, invokes the statutory limited judicial review of its action by a State court; that it has voluntarily brought itself within the jurisdiction of the State court and cannot then renounce it and invoke the jurisdiction of the Federal Court. [Elsas v. Montgomery Elevator Co., 38 Fed. (2d) 302; McFall v. Barton-Mansfield Co., 333 Mo. 110, 61 S. W. (2d) 911.] It would seem that such removal would prevent the attainment of many objects of our act. Prompt settlement at minimum expense is one of the main purposes of the limited review provided, which prevents the introduction of any evidence and gives priority in both circuit and appellate courts. [Sec. 3342, R. S. 1929.] Moreover, even after an award is finally adjudicated, it may be changed where there is a change of condition. [Sec. 3340, R. S. 1929.] Appellants cite cases in which proceedings for review of awards under Workmen's Compensation Acts of other states have been removed to Federal Courts. However, the rights, obligations and proceedings under these acts and the theories upon which they are based are all so different from ours that we do not consider them authority for overturning the rulings in the Elsas and McFall cases. The answer to appellants' contention seems to be that an employer does not have to accept our Workmen's Compensation Act and make its provisions a part of its contracts with its employees, but may instead leave the adjudication of their rights to suits upon common-law liability and have such actions removed to the Federal Court, when there is diversity of citizenship.

Appellants still contend upon this appeal that Bolin's death did not result from an accident arising out of and in the course of his employment. However, it is now well settled that findings of fact by the commission which are supported by substantial evidence are binding upon this court. [Gillick v. Fruin-Colnon Construction Co. 334 Mo. 135, 65 S. W. (2d) 927; Shroyer v. Missouri Livestock Commission Co., 332 Mo. 1219, 61 S. W. (2d) 713; Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130.] We hold that the facts above stated, with the reasonable inferences which may be drawn therefrom in claimant's favor, constitute substantial evidence to support the finding of the commission that there was an accident and that it arose out of and in the course of Bolin's employment. [Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601.]

 Appellants next contend that the Missouri Workmen's Compensation Law did not apply because Bolin was a resident of the State of Iowa and that claimant's rights could only be those provided by the Iowa Compensation Law. This question has been settled by this court in the recent case of Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S. W. (2d) 1036. In that case Daggett, a resident of Denver, Colorado, came to Kansas City, Missouri, where he entered into a contract with the steel company to work on a viaduct in the State of Kansas. In that case the appellants contended that "the employment would not be within the purpose and meaning of the Missouri Workmen's Compensation Act, because the making of the contract in Missouri, standing alone, would not be sufficient to bring the case within the act." This court, however, ruled the employee was protected by our act, saying:

"There would be merit in this contention if the making of the contract of employment was the only thing that occurred in Missouri, but such is not the case. The record shows that the steel company admitted that it was a major employer operating under the Missouri Workmen's Compensation Act. This being true, it was subject to all provisions of the act. The act (Sec. 3310, R. S. 1929, Mo. St. Ann., sec. 3310, p. 8245) provides that the Workmen's Compensation Act shall apply to all injuries received outside of this State under contract of employment made in this State unless the contract of employment in any case shall otherwise provide. . . .

"The appellant steel company being a major employer under the Missouri Compensation Act, every provision of that act became an integral part of every contract of employment made by the steel company in Missouri. It therefore follows that by the terms of the contract of employment entered into between the steel company and Daggett, the steel company agreed to pay, and Daggett agreed to accept, compensation in case of injury, wherever it occurred, in accordance with the provisions of the Missouri Workmen's Compensation Act. This is so because the Compensation Act, which is a part of the contract so provides."

The result reached in the Daggett case finds support in recent decisions in other states. In Johnston v. Industrial Comm. (Ill.), 185 N. E. 191, the Illinois act was applied to a salesman who apparently was not a resident of Illinois and so far as the opinion shows had never even been in that state. This man came to the branch office, in Detroit, Michigan, of an Illinois corporation, which was operating under the Illinois Compensation Act, and there signed a contract of employment as its salesman. This contract was sent to Chicago for acceptance and the court held that the contract was made in Illinois because the final act necessary to make it valid was performed there. The salesman was injured while on his way to Buffalo, New York. The reason given for holding that he was entitled

to compensation, under the Illinois act, was that the contract was made with the Illinois corporation in Illinois.

In Home Insurance Company v. Hepp (Colo.), 15 Pac. (2d) 1082, a Colorado company made a contract in Colorado with a resident of New Mexico to act as state agent for the Colorado company in New Mexico. The employee and his family both before and after making this contract lived in New Mexico. However, the agent's contract provided that he was also to work in certain territory in southern Colorado. The court held that the Colorado act covered an employment which contemplated the performance in that state of some of the services to be rendered just as much as one which contemplated that all of the services would be performed in the state; and that, since a substantial part of the services, contracted for, were to be performed in Colorado, compensation should be awarded.

In Roberts v. I. X. L. Glass Corporation (Mich.), 244 N. W. 188, 191, the court held that the Michigan act covered nonresident employees working outside of the State under contracts made in the State with a resident employer. The court said:

"There is no ground for holding that an employee, otherwise within the terms of the act, forfeits his protection thereunder merely because he is a nonresident living across the state line. . . . It would also seem to lead to this anomalous situation. Without the consent or knowledge of the employer, one employed in this State by changing his residence from without the State to one within the State would automatically place himself within the act, or, if during his employment should become a nonresident, he would not thereafter be bound by the act, and could maintain a common-law action against his employer notwithstanding the employer had elected to come under the act."

It will, therefore, be seen that such a construction of the act affords protection to the employer as well as to the employee. There is nothing in our Workmen's Compensation Act, either in Section 3305, Revised Statutes 1929, defining employees, in Section 3310, Revised Statutes 1929, stating the employment to which it applies, or in the sections which relate to employers, which limits its application to employees who are residents of this State. Section 3310, Revised Statutes 1929, only requires that employees to receive its benefits shall have sustained injuries in this State or shall have made their contract of employment in this State. The act contemplates that the employer shall be operating under our act; not that all of its employees shall live in this State. This court has held that it is not even necessary, in order to bring an employer under the act as a major employer, that his employees shall be employed in the State of Missouri or employed under contracts of employment made in the State of Missouri. [Elsas v. Montgomery Elevator Co., 330 Mo. 596, 50 S. W. (2d) 130.] For a full discussion of the earlier cases

concerning the right to compensation of an employee while working outside of the State under whose compensation act he claims, see 1 Schneider, Workmen's Compensation Law, 411-427, section 47. [See, also, Bradford Electric Light Co. v. Clapper, 286 U. S. 145, 52 Sup. Ct. 571, 76 L. Ed. 1026; 82 A. L. R. 696; State of Ohio v. Chattanooga Boiler & Tank Co., 289 U. S. 439, 53 Sup. Ct. 663, 77 L. Ed. 1307.]

It would seem that this case is a stronger one in plaintiff's favor than the Daggett case. Bolin was not merely an itinerant worker, who happened to come into Missouri and make a contract with a firm operating under the Missouri act to perform work for it in another state on one isolated project. He had previously been an employee of this same employer. He became a more permanent employee of the Missouri branch of a corporation operating under the Missouri Workmen's Compensation Act and was employed to perform its work both in Missouri and Iowa. He and his family lived in the State of Iowa because it was beneficial and convenient to his Missouri employer for him to do so. This arrangement was one which evidently reduced the traveling expenses and made possible quicker service in his territory, but his business headquarters at all times was at St. Joseph, Missouri. It was there Bolin sent his orders and remittances. It was from there he received his instructions and salary, and it was to that place he was called for sales meetings. The operations of modern business corporations are not confined by state lines, but are limited by what is called trade territory. Swift & Company, although an Illinois corporation, finds it convenient to do business through branches which serve certain trade territory. The St. Joseph branch of Swift & Company operated in several states but it, as the headquarters for its trade territory, was located in Missouri. It was doing business throughout this territory from Missouri, and it was a major employer operating under the Missouri Compensation Act. It certainly could, if both it and its employees desired, make the rights and obligations arising under the Workmen's Compensation Act a part of the contract between them. When it does make such a contract, the mere fact, that for convenience in doing the work covered by the contract an employee is required to take up his residence outside of the State of Missouri, is no reason for refusing to enforce the mutual obligations, arising therefrom, the same as in the case of obligations created by any other contract.

Appellants also contend that the Missouri Compensation Act was not applicable because it was not in effect at the time the original contract of employment was made. This court in the Daggett case fully discussed and distinguished the case of Mitchell v. St. Louis Smelting & Refining Co., 202 Mo. App. 251, 215 S. W. 506, relied upon by appellants. Appellants' contention was settled by the decision of this court en banc in State ex rel. Brewen-Clark Syrup Co. v.

Missouri Workmen's Compensation Comm., 320 Mo. 893, 8 S. W. (2d) 897, holding that when the act was adopted and accepted, both by the employer and employee, their contract was thus modified and changed and the act "immediately became a part of, and to the extent of all its terms and provisions, supplemented the contract of employment existing between them." We hold that the commission's ruling was correct.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.