Argued November 20, 1935; affirmed January 14, 1936

# PERSONIUS *v.* ASBURY TRANSPORTATION COMPANY OF OREGON, Inc.

(53 P. (2d) 1065)

*E. L. McDougal* and *Lawrence Lister,* both of Portland, for appellant.

*W. H. Anderson,* of Pocatello, Idaho, and *John A. Lee,* of Portland (Peterson, Anderson, Bowen & Anderson, of Pocatello, Idaho, and John A Lee, of Portland, on the brief), for respondent.

BAILEY, J. The defendant has appealed from a judgment against it awarding damages to plaintiff for personal injuries suffered by him in a collision between the passenger bus which he was driving and a truck and trailer owned by the defendant company. The accident occurred about 4:30 o'clock in the morning of March 1, 1933, at a point some five or six miles east of Baker on the Old Oregon Trail highway. This highway is hard-surfaced, 18 feet wide, and follows a meandering course, with many curves and grades.

The truck and trailer of the defendant company, each weighing about 22,000 pounds and carrying a capacity load of gasoline, were proceeding in an easterly direction. The truck was about 45 feet long, and the trailer, with its coupling, about 26 feet.

A storm was in progress and the rain as it fell formed an icy, slippery surface on the highway. This condition was first noticed by Carter, driver of the defendant's truck, as he left Baker. A short distance

before reaching the place where the accident occurred, Carter, who was a driver of many years' experience, had stopped and put chains on the two rear wheels of the truck. As he started to go up the next grade he found that it was impossible to proceed, due to the fact that the drive wheels would not hold on the ice-coated pavement. The rear end of the truck swung around in the highway to the left, in a northerly direction, to the shoulder of the road, so that the truck faced southeast at an angle of about 45 degrees to the course of the highway. The front end of the trailer followed the rear end of the truck, so that truck and trailer formed a triangle having the south side of the highway as its base.

At this point there was a fill on the highway with downward sloping banks from the shoulders of the road, the southerly side protected by a fence or guard-rail. The truck was stopped with its radiator within about four feet of the rail at its east end.

Carter attempted to bring the truck back straight and upon his side of the highway and covered the surface of the road at that point with gravel, in order to obtain traction for the rear wheels. When he found that he could not move the truck he ran up to the top of the hill to the east, to ascertain whether he could ''see anybody or a car approaching''. As he saw no one he returned to the truck, and while sitting in its cab first saw the lights of the approaching bus which was being driven by the plaintiff. The truck had been stalled approximately 45 minutes when Carter saw the lights of the bus.

Personius, the plaintiff, was an experienced driver 38 years of age. He had been engaged in that occupation since 1920, and in the employ of Union Pacific Company since September, 1928. He was driving one

of that company's twenty-six-passenger busses weighing about 17,000 pounds exclusive of passengers, baggage and gasoline, had left Boise, Idaho, at 11:45 p. m. on February 28, and was due at Baker at 4:30 in the morning of March 1. At the time of the accident his bus was carrying eight adult passengers and two children. He encountered the rain storm at 24 or 25 miles east of the scene of the accident, but no ice until within 11 or 12 miles of that point. He had chains, but did not use them.

According to his testimony, he first saw the truck when within about 140 or 150 feet east of it, as he rounded the last curve, while going at a rate of about 25 miles an hour. There were no lights on either the truck or the trailer, he testified, and no flares lighted in the highway, no flag or other warning signal. The truck and trailer were battleship gray in color, not easily visible on a dark morning.

Plaintiff's own account of the collision, on direct examination, was as follows:

"Well, when I made the curve my lights come back on the road, got out of the curve, I see the rear end of this truck setting on my side of the road, with the trailer straight down behind it on the same side of the road.

\*　　　\*　　　\*　　　\*　　　\*

"Well, when I noticed the truck in the road I threw my bus into third-gear and pulled it up to the center of the road to see the other side of the road, because as I was just coming out of the curve my lights didn't show the upper side of the road, the left hand side. I see that the road was blocked entirely; there was no chance of getting by.

"Q. And how close were you to the oil tank at that time? A. About forty foot. Q. About forty foot. And you may go ahead and state what you did then. A. Well, I didn't have much time to do anything. I knew what

the condition of the road was on each side, a ditch on one side of about eight foot and on the other side about fifteen foot, and I didn't dare go into the ditch, and I knew if I hit the oil tank I was liable to break it open and set fire, because my motor was hot; I had been traveling right along; so I just pulled it up in the center of the road and hit the truck in the front end."

He stated that he was traveling 15 to 18 miles an hour when the collision occurred. On cross-examination the plaintiff gave the following testimony:

"Well, I come around this here blind curve, making a curve to the left, and a-going downhill, and as I make the curve my lights are not on the highway at all; they are out in the field; and when my lights got to where they would hit the highway I was on a downhill grade and my lights will hit high naturally, as they will on any grade, and as soon as I seen the back end of this truck on my side of the highway I started putting on my brake very light, because the road was slick, and I steered my bus to the middle of the road and I see he had the whole highway blocked. Well, in that time I was about forty foot of it, and I knew I didn't dare to put it [the bus] in the ditch; if I did it would kill my passengers, and I knew if I hit the tank it would break it open; it was full of gasoline and my motor was hot, so I went up and hit the truck in the front end."

Just before the truck was hit, Carter jumped from its cab to safety. By force of the impact the front end of the truck was demolished. The trailer broke loose, rolled down the hill and crashed through the guard-rail and into the ditch. Personius, the bus driver, was violently thrown against his steering wheel and the side of the bus, whereby he sustained the injuries which are the basis of this action.

The complaint charges the defendant with negligence in the following respects: (1) "in parking and placing said oil tank truck and trailer across the high-

way and thereby blocking traffic thereon, and in extinguishing the lights on said oil tank truck and trailer;" (2) "in parking and placing said oil tank truck and trailer across said highway without any light or lights thereon to warn other travelers on said highway of the blocking of said highway with said oil tank truck and trailer"; and (3) "in failing to put out a flag to warn approaching traffic and particularly the plaintiff, or to employ or use some other adequate warning of the presence of said oil tank truck and trailer on said highway and impart the information that defendant . . . had blocked and closed up said highway."

The acts of negligence charged against it by the plaintiff were denied by the defendant, and in its first affirmative defense it charges that the plaintiff was "guilty of recklessness, carelessness and negligence in the following particulars:" (1) "in failing to observe the highway and the traffic thereon and particularly the truck and trailer of the defendant herein;" (2) "in operating plaintiff's bus at a high and dangerous rate of speed under the circumstances;" and (3) "in failing to have said bus under control and to have chains on its wheels so as to stop the said bus and prevent a collision with the disabled truck and trailer of the defendant herein".

As a second affirmative defense the defendant alleges that plaintiff was, at the time of the mishap, and for some time prior thereto had been an employee and bus operator of the Union Pacific Stages, Inc. (mentioned and to be mentioned elsewhere in this opinion as Union Pacific Company), and that the contract of employment was entered into in the state of Idaho; that the Union Pacific Company "was operating under the benefits of what is commonly known as the

workmen's compensation law of the state of Idaho'', which law was administered by the industrial accident board of that state; that at the time of plaintiff's employment by the Union Pacific Company it was agreed by and between said employer and said employee ''that damages for injuries, if any, received by the plaintiff in the course of his employment outside the state of Idaho should be subject to the remedies provided by the industrial accident board and the Idaho laws in relation thereto, covering accidental injuries''; and that it was further agreed that the plaintiff herein and the Union Pacific Company ''should be governed by the provisions of said compensation law and said industrial accident board''.

This affirmative answer also alleges that the plaintiff while in the employ of Union Pacific Company, in the vicinity of Baker, Oregon, met with an accidental injury arising out of and in the course of his employment, the same injury mentioned in the complaint; that ''by virtue of the statutes of the state of Idaho, and laws creating the industrial accident board, and other provisions in connection therewith, and the agreements and relationship of the parties, the plaintiff was subject to the laws of the state of Idaho and entitled to the benefits thereof''; and that after receiving such injury the plaintiff filed with the industrial accident board a notice thereof and a claim for compensation, and ''thereafter, in accordance with the provisions of said act, said industrial accident board took jurisdiction of said claim and there was paid to the said plaintiff'' compensation in the amount of $44.60 by the Union Pacific Company, which company, under the laws of Idaho, is a self-insurer. This compensation is alleged to cover periods of time totaling two weeks and three days.

According to this second affirmative answer the plaintiff received the sum mentioned and "executed a release for said amount covering said periods of time, in full settlement of all claims and causes of action against all persons on account of said accidental injury above mentioned"; and thereafter plaintiff filed with the board a claim for additional compensation. A hearing was had before the board, at which plaintiff and the Union Pacific Company were represented by counsel. The board made a finding that the plaintiff had received full compensation for the disability which he had suffered in consequence of the accident.

Certain sections of the Idaho code are then pleaded by the defendant. Those which are material here are the following, as found in the annotated official edition of 1932:

"43-1003. Right to compensation exclusive.—The rights and remedies herein granted to an employee on account of a personal injury for which he is entitled to compensation under this act shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury.

"Employers, who hire workmen within this state to work outside of the state, may agree with such workmen that the remedies under this act shall be exclusive as regards injuries received outside this state by accident arising out of and in the course of such employment; and all contracts of hiring in this state shall be presumed to include such an agreement.

"43-1004. Liability of third persons.—When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover

damages; and, if compensation is claimed and awarded under this act, any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person; provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action.''

Section 43-1006 provides that the employer may enter into an agreement with his employees to provide a system of compensation or benefits in lieu of the compensation provided by the workmen's compensation law of Idaho, and that ''copies of settlements made under the provisions of this section shall be filed with the board''. Section 43-1402 provides that when the employers and injured employees make an agreement in regard to compensation under the act, a memorandum of such agreement shall be filed with the board, and, ''if approved by it, thereupon the memorandum shall for all purposes be enforceable under the provisions of section 43-1410, unless modified as provided in section 43-1407. Such agreements shall be approved by the board only when the terms conform to the provisions of this act''. Sections 43-1410 and 43-1407, referred to in § 43-1402, are not pleaded. Section 43-1415 is as follows:

''Extraterritorial application of law.—If a workman who has been hired in this state receives personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state even though such injury was received outside of this state.

''If a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury

under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can' reasonably be determined and dealt with by the board and the courts in this state."

The defendant at the trial offered to prove by documentary evidence that the plaintiff had received from the Union Pacific Company the sum of $44.60 and that he had filed notice of the injury and claim for additional compensation with the industrial accident board of Idaho; that a hearing had been had thereon and that his claim for further compensation for the injury had been rejected by that board. The offer of proof consisted of a canceled draft for $44.60 payable to the plaintiff, which contained this statement: "Being amount of weekly wages due for the period of two weeks, three days, under the workmen's compensation law of Idaho, account personal injuries near Baker, Oregon, about March 1, 1933, while stage driver." This draft was dated August 7, 1933. Also offered was a receipt dated August 7, 1933, given by the plaintiff to Union Pacific Company, which contained substantially the same language as that used in the draft. It was filed with the board on August 8, 1933.

On that day the notice of injury with claim for additional compensation was filed with the board, and on the hearing of this application, wherein plaintiff appeared in person and by the same attorneys who appear here for him, and his employer was also represented by counsel, the board made findings in which it was recited that the plaintiff entered into the employ of the Union Pacific Company in the state of Idaho; that he had received an injury as hereinbefore described; and that on August 7, 1933, the Union Pacific Company had paid to the plaintiff "all compensation due him

for his said disability for work". Based on said findings the board made an order in which it was stated that the claim of Personius for further compensation against the Union Pacific Company "be and the same hereby is denied and his application dismissed". In addition to the above documents a certified copy of the transcript of the evidence taken at the hearing before the board was offered.

All the foregoing offer of proof was rejected by the trial court and on its refusal to admit such proof the defendant bases one of its principal assignments of error.

It is the defendant's contention that because the industrial accident board of Idaho found that the plaintiff entered into the employment of Union Pacific Company in Idaho, such finding is *prima facie* proof of such fact and that the law of Idaho (§ 43-1003, *supra*) creates a presumption that when the employment is initiated in the state of Idaho the employer and the employee have entered into an agreement that the remedies under the workmen's compensation law of that state "shall be exclusive as regards injuries received outside" Idaho in accidents arising out of and in the course of such employment.

It is further asserted that since such hiring is presumed to have been made under that agreement the plaintiff upon receiving in Oregon an injury from a third party, the defendant in this action, arising out of and in the course of his employment, had an election under the Idaho law either to sue the third party for damages suffered or to accept compensation under the provisions of the Idaho workmen's compensation act; that since he did accept the benefits of the Idaho act, whatever right he might have had against the defendant in this case was automatically assigned to plain-

tiff's employer, Union Pacific Company; and that the Union Pacific Company, alone, could maintain an action against this defendant for the injury to plaintiff.

This contention of the defendant is attempted to be fortified by advancing the theory that had the plaintiff brought this action against the defendant for personal injuries in Idaho, rather than Oregon, relief would have been denied him by the Idaho courts because he had already received compensation for his disability under the Idaho workmen's compensation act; that therefore the Oregon courts should likewise deny any relief to the plaintiff in this proceeding; and that the refusal of this court to follow what the defendant suggests as the proper treatment of such an action in Idaho would be a denial of the full faith and credit to which the Idaho law and proceedings are entitled in a sister state.

Many cases are cited in support of these contentions by the defendant, all of which involve workmen's compensation laws and for the purpose of analysis are here classified.

(1) In these instances there is shown an aggravation of the injury due to the negligence of the attending physician: *Roman v. Smith*, 42 Fed. (2d) 931 (Idaho); *McDonald v. Employers' Liability Assurance Corporation, Ltd.*, 288 Mass. 170 (192 N. E. 608); *McDonough v. National Hospital Ass'n*, 134 Or. 451 (294 P. 351), which case is explained in *Keadle v. Padden*, 143 Or. 350 at 365 (20 P. (2d) 403, 22 P. (2d) 892). In all these cases it is held that the injury resulting from the negligence of the physician became a part of the original injury and was to be taken into consideration in the adjustment of compensation due the injured workman. In none of these cases was it held that the injured work-

man had an election to bring action against the party whose negligence caused the aggravation.

(2) Included here are cases in which only workman and employer were involved, both were covered by the workmen's compensation law of the state in which the employer's principal place of business was located, and the accident happened outside that state: *Scott v. White Eagle Oil & Refining Co.*, 47 Fed. (2d) 615 (Kansas); *Bolin v. Swift & Company*, 335 Mo. 732 (73 S. W. (2d) 774); *In re Spencer Kellogg & Sons*, 52 Fed. (2d) 129; *Dameron v. Yellowstone Trail Garage*, 54 Idaho 646 (34 P. (2d) 417); *Bradford Electric Light Co. v. Clapper*, 286 U. S. 145 (76 L. Ed. 1026, 52 S. Ct. 571, 82 A. L. R. 696).

In the Scott case the federal district court in Kansas held that the injured employee was entitled to recover against his employer under the compensation act of Missouri, and that such action was *ex contractu*, based upon the contract of hiring.

The Bolin case also involved the Missouri statute and it was there held that the widow of a deceased workman was entitled to recover in a proceeding in Missouri for the death of her husband from injuries sustained by him in the state of Iowa while engaged in the business for which he was hired.

In the Kellogg case it was held that the New Jersey law was controlling as to a recovery in the state of New York by employees against their employer for injuries occurring in the latter state. The decision was based on the fact that the state of their employment was New Jersey.

The Idaho supreme court in its opinion in the Dameron case, following the reasoning in a Colorado decision, held that an employee injured in the state

of Washington could recover under the law of Idaho, the state of his employment.

In *Bradford Electric Company v. Clapper*, supra, the United States supreme court held that the Vermont compensation law was applicable to death occurring to a workman in the state of New Hampshire, where the action was instituted.

In all the foregoing cases the court applied the law of the state of employment. The question of liability of any one other than the employer was not involved.

(3) This group consists of cases in which the injured workman was subject to the act and the act itself did not grant to him a right of recovery against a third party: *Northern Pacific Railway Co. v. Meese*, 239 U. S. 614 (60 L. Ed. 467, 36 S. Ct. 223), involving the Washington workmen's compensation law; *Clark v. Olson*, 96 Mont. 417 (31 P. (2d) 283); *Matheny v. Edwards Ice Machine and Supply Co.*, 39 Fed. (2d) 70.

In the two precedents last cited the injury occurred at the place of employment. The Matheny case involves an accident which happened in Oregon. *Clark v. Olson*, wherein the opinion cites and follows *King v. Union Oil Company*, 144 Or. 655 (24 P. (2d) 345, 25 P. (2d) 1055), had reference to an accidental injury which occurred in Montana.

(4) This classification includes cases in which the accident occurred and the action was brought against a third party in the state of the injured workman's employment: *Tandsetter v. Oscarson*, 56 N. D. 392 (217 N. W. 660); *Holmes v. Henry Jennings & Sons*, 7 Fed. (2d) 231 (Oregon); *Barry v. Bay State Street Ry. Co.*, 222 Mass. 366 (110 N. E. 1031); *Workmen's Compensation Exchange v. Chicago, M. St. P. & P. R. Co.*, 45 Fed. (2d) 885 (Idaho).

In the Tandsetter case the action was brought by the injured workman against a third party and the court held that the acceptance of compensation by the injured workman from the fund precluded the maintenance of such action by him against the third party responsible for his injury. As a reason for this ruling the court stated that, "It becomes the duty of the workmen's compensation bureau to thoroughly investigate the cause of injury, and if it finds that the injury was caused by some third party who does not come under the act, then the workmen's compensation bureau is authorized to bring an action against said third party for two reasons, first, to reimburse the compensation fund for the amount of the award, and, for the benefit of the injured workman, if a recovery is had for more than the amount awarded." After referring to a Wisconsin decision the court further observed:

"An examination of the decisions of the different states discloses that, where the courts have held that the injured workman could sue a third party after the award had been made, the statute in such state usually gives him that right, and in nearly all of the statutes the fund is provided by the employer directly or by some insurance company in which the employer has insurance. In this state the insurance is provided by the state, from the fund paid to the compensation fund in premiums by the employer, and *the members of the workmen's compensation bureau can not shift the responsibility of bringing an action to reimburse the compensation fund, and for the benefit of the injured workman, if there is a cause of action against a party who does not come under the act.*" [Italics supplied.]

In the Holmes case, which arose in Oregon, the court held that the right to sue a third party for tort was, by the injured workman's accepting compensation from the accident fund, assigned to and vested in the

industrial accident commission and that the injured workman could not maintain such an action. The Oregon statute is similar to the North Dakota law and unlike the Idaho act in that the compensation to the injured workman is paid out of a state fund and not directly by the employer or his insurer, as in Idaho.

The statute of Massachusetts involved in the Barry case provided no reservation to the employee of any excess recovered by the employer against a third party whose negligence had caused the injury, when the injured workman had elected to take compensation under the act.

The facts in the Workmen's Compensation Exchange case, which involved the Idaho workmen's compensation act and was decided by the federal court for the district of Idaho, were that the widow of the employee who had been accidentally killed by the defendant applied for and was awarded a sum in excess of $8,000 against the timber company by which the decedent had been employed. A part of this award was covered by insurance in the Workmen's Compensation Exchange, and that insurance company, together with the timber company, the widow and others, brought the action against the railroad company which was alleged to have been the cause of the workman's death. It was held by the court that the widow was not a proper party plaintiff, and the decision was based largely on *Tandsetter v. Oscarson*, supra, in which precedent the court denied to the injured workman the right to maintain an action, on the ground that he had received compensation from a state fund and the law imposed a duty on those in charge of the fund to prosecute the action. The opinion in the Workmen's Compensation Exchange case, however, declared that the insurance company was a proper party plaintiff with the timber

company, as it would "seem to have the right under the recognized rule granting to insurers the right of subrogation by operation of law to sue the one causing the damage or loss which it has paid or is paying".

(5) As a fifth classification is litigation in which employer and employee are both subject to the workmen's compensation act of one state and the employee is injured in another state by a third party and there brings action against such third party: *Saloshin v. Houle*, 85 N. H. 126 (155 Atl. 47). This case will be referred to in detail later in this opinion.

Another basis of differentiation between the cases cited by defendant may be based on the wording of the statutes involved, to wit: (a) those in which the acceptance of compensation under the act, for injury caused by a third party, works a complete assignment of the cause of action to the employer, and the injured workman under such assignment has no interest in any recovery by the employer from the tortfeasor: *Barry v. Bay State Street Ry. Co.*, supra, which is based on the decision in *Turnquist v. Hannon*, 219 Mass. 560 (107 N. E. 443); (b) cases in which the statute grants to the employer the right either to sue upon or compromise the assigned cause of action without the consent of the injured workman: *Hunt v. Bank Line*, 35 Fed. (2d) 136; and (c) cases in which the amount of recovery exceeds the amount of compensation paid the injured employee, and the excess recovered against the third party, exclusive of costs of suit, goes to the injured employee: *Workmen's Compensation Exchange v. Chicago, M., St. P. & P. R. Co.*, supra; *Tandsetter v. Oscarson*, supra; *Holmes v. Jennings & Sons*, supra.

In those cases in which only the employee and the employer are involved and the injury is sustained in the course of employment and outside the state where

the employment originated, the courts limit the right of the injured employee to the compensation to which he is entitled under the workmen's compensation act of the state of his employment, on the theory that the provisions of such act have become a part of the contract of employment and that therefore the employee's action is *ex contractu* and not in tort: *Bradford Electric Company v. Clapper*, supra; *Scott v. White Eagle Oil & Refining Co.*, supra; *United States Casualty Co. v. Hodge*, 64 App. D. C. 284 (77 Fed. (2d) 542).

■ A recovery against a third party tortfeasor is not based upon contract, especially in those instances in which such third party is not a resident of the state of the injured workman's employment. In the case at bar the defendant is a corporation, organized under the law of the state of Oregon. The injury to plaintiff was suffered in this state. Nothing which the defendant did in the state of Idaho changed the nature of action which could be maintained against it in Oregon from one sounding in tort to one based on contract.

We are not necessarily concerned in this proceeding with what remedies, if any, the plaintiff might have against the defendant in the state of Idaho. The principal question is whether this action can be maintained in the state of Oregon, and on considering the matter now before us we may eliminate entirely the fact that Oregon has a workmen's compensation act. Neither the plaintiff nor his employer was subject to the Oregon act.

The only adjudication which has been cited to us by the defendant involving an action by an employee against a third party in a state other than that in which he was subject to the workmen's compensation act is that of *Saloshin v. Houle*, supra. In that case the administratrix of a deceased workman instituted an action

in the state of New Hampshire, where the injury caus-
ing decedent's death was sustained. After the action
was commenced and while it was still pending the
administratrix applied for and obtained compensation
for his death, under the workmen's compensation law
of New York, in which state decedent had been a resi-
dent and had been employed, subject to the workmen's
compensation law, by a company which had its prin-
cipal place of business in New York. Upon the ac-
ceptance of compensation by the administratrix the
employer's insurer filed a motion to join as a party
plaintiff in the proceeding. Thereupon the defendant
moved for a dismissal of the action on the ground that
the insurer's motion was not filed within two years
after the workman's death and that therefore any
cause of action inuring to the insurer was barred by
the statute of limitation. In order to obtain a ruling of
the supreme court the case was transferred to that
tribunal from the trial court. It was held by the higher
court that the action might be further maintained in
the plaintiff's name and for the insurer's use and bene-
fit. In disposing of the case the court said that under
the laws of New Hampshire an assignee of a claim was
obliged to sue in the assignor's name. Reference was
then made to the fact that in New York the assignee
might sue in his own name, and the opinion continued:
''The distinction is one of procedure alone, as to which
the *lex fori* governs: 5 C. J. 986.'' In the course of
the opinion the court further said:

''A cause of action for personal injuries, if not
terminable by death and if in form *ex contractu*, is
generally assignable under local law: Stewart v. Lee,
70 N. H. 181, 185 (46 A. 31). The policy and the reason
for the rule are broad enough to make the form of ac-
tion immaterial. In that case a judgment in an action
for breach of promise of marriage was held assignable,

and an action of negligence for personal injuries can be no less so.''

The reasoning in the above excerpt is not applicable to the case at bar, for the reason that this action, one for personal injury, is not in form *ex contractu*; and furthermore, the assignment of a claim after being reduced to judgment is entirely different from the assignment of an unliquidated claim for damages, which does not arise out of contract.

There is this further reason why the New Hampshire case which we are now discussing is of little help in deciding the question before us: the New York compensation law there involved provided that the acceptance of compensation under the act by the injured workman effected an assignment of his cause of action to the insurance carrier, which thereby became entitled to recover the full amount of the loss caused by the workman's injury, in which recovery the workman had no interest.

Reverting to the case at bar, we find from the admitted facts that the defendant is a corporation organized under the laws of the state of Oregon. The accident happened in Oregon. The action was not instituted until approximately 10 months after it occurred. The judgment herein was entered some 21 months after plaintiff sustained his injury. No contention has been made at any time that the plaintiff's employer, Union Pacific Company, has made any demand upon the defendant for the $44.60 which it paid to the plaintiff. The judgment entered herein is for $10,000. It is therefore obvious that the amount sought and recovered in this case greatly exceeded the sum paid to plaintiff by his employer, and that the injured workman had a much greater interest in the sum recovered than did the employer.

This court, in *Rorvik v. North Pacific Lumber Co.*, 99 Or. 58 (190 P. 331, 195 P. 163), held that the widow of a workman injured in this state and at the time subject to the workmen's compensation law of California was not, by reason of the widow's having accepted compensation under the California law, precluded from maintaining an action in Oregon against a third party responsible for her husband's accidental death. The California law then in effect provided that when a claim was made against his employer by an injured employee, or by his personal representative in the event of death, such application should operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative might have against any third person for such injury or death, and that "such employer shall be subrogated to any such right and may enforce in his own name the legal liability of such other party".

The late Chief Justice McBRIDE pointed out that a right of action for tort is not assignable in this state and that the plaintiff could not have made in California an assignment of an interest in her claim for damages to a resident of California, which would have authorized such assignee to bring an action in Oregon to recover for the death of Captain Rorvik; and that an action based on such an assignment would be contrary to the policy of Oregon laws and against the decisions of our courts. The opinion in that case further observed:

"While courts, as a matter of comity, will usually enforce a right arising out of a statute of another state, they will not do so where the statute infringes upon the law of the forum: 5 R. C. L., § 8, and cases there cited.

"It is conceived that the statute of California can give the Klamath Steamship Company no higher or

greater right than it could have obtained by private contract with plaintiff, and that could never have gone to the extent of authorizing it to sue in its own name in our courts on account of a tort committed to the damage of plaintiff. It may also be noticed that plaintiff is not divested by the California statute of all interest in her claim, but the employer is only allowed to retain an amount sufficient to reimburse itself for the amount which it has paid, or is liable to pay, as compensation, and is required to pay the overplus, if any, to plaintiff.

"The California act does not profess to make full compensation for the injury, but limits the amount to be allowed to the sum of $5,000. Between the employer and employee this sum is the limit of the recovery, but this fact does not bar a recovery against the actual wrongdoer to the full extent of the injury suffered. With such an interest in the case we are of the opinion that plaintiff would, in any event, be entitled to sue in her own name in our courts in case the Klamath Steamship Company should fail to do so, even if we gave, which we do not, full effect to the subrogation provided for by the California statute."

In *Solomon v. Call*, 159 Va. 625 (166 S. E. 467), action was brought against a third party by an injured workman who was covered by the workmen's compensation law of Pennsylvania and at the time of bringing action had received compensation under that law for his injury. It was contended by the defendants therein that since the plaintiff had already obtained compensation under the Pennsylvania act he should be precluded from maintaining his action in Virginia. The court, in holding adversely to defendants, cited with approval *Rorvik v. North Pacific Lumber Co.*, supra, and, in answering the contention of defendants that it was against the public policy of the state of

Virginia to permit the maintenance of such an action, said:

"We do not see just how the public policy of Virginia will be contravened by permitting the plaintiff to maintain an action at law for damages for his injuries against the negligent third person who, as he claims, was responsible for them. Nor do we think that the question of conflict of laws has any application here. The Virginia cases relied upon by counsel for the defendant in support of his contention in our opinion are not applicable. It is not against public policy to require the negligent wrongdoer to answer in damages to one who has been injured in an automobile accident for the injuries inflicted. Public policy would be more offended by permitting the wrongdoer to escape liability than it would be to require him to answer in damages. Aside from this, however, we have held in Va. Electric & Power Co. v. Mitchell, *supra* [159 Va. 855 (164 S. E. 800, 803)], that, but for the Virginia workmen's compensation act, the injured employe is permitted to maintain his action at law for full damages for his injuries against the negligent third party who is responsible for them, and we adhere to that principle in this case, because the Virginia act has no application to the plaintiff."

The following cases hold that a workmen's compensation statute which provides that when a workman receives compensation under the act the one paying such compensation shall be subrogated to his right of action against the third party, does not preclude such injured workman from maintaining an action against a negligent tortfeasor in his own name: *Wm. Cameron & Co. v. Gamble,* (Tex. Civ. App.) 216 S. W. 459, and *Smith v. Virginia Ry. & Power Co.,* 144 Va. 169 (131 S. E. 440), wherein authorities from many other jurisdictions are reviewed. In the Smith case the court observed:

"The statute subrogating the employer to the rights of the employee was not enacted for the benefit of the

negligent third party; he has slight interest in it. He remains liable for the entire amount of such damages as may be lawfully recovered of him. The most that he could possibly claim is that after judgment he would be interested in having the proper apportionment made between the employer who has paid the compensation and the employee, if the recovery against him should exceed the amount paid to such employee under the compensation act.''

■■ The law of Idaho granting to the employer the right to maintain in his own name an action to recover for injuries inflicted on his employee by a third party, if such a construction can be given to the Idaho statute, is not controlling here. The supreme court of Idaho has not construed the word ''subrogation'', appearing in that statute, as equivalent to, and meaning the same thing as, an absolute assignment. Nor has it held that an injured workman, after receiving compensation under the act, is precluded from maintaining an action of this nature.

It may be conceded for the purposes of this opinion that the state of Idaho ''has the power to forbid its own courts to give any other form of relief for such injury'' than prescribed by its workmen's compensation act: *Alaska Packers Ass'n v. Industrial Accident Commission*, 294 U. S. 532 (79 L. Ed. 1044, 55 S. Ct. 518). The prohibition imposed on the Idaho courts has no extraterritorial effect on the courts of this state.

Section 1-301, Oregon Code 1930, directs that, ''Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in section 1-303, but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract.'' Section 1-303, Oregon Code 1930, grants authority to an administrator, executor, trustee of an express trust, or a person expressly au-

thorized by statute, to bring suit without joining with him the person for whose benefit the action is prosecuted. This action was brought in accordance with § 1-301 of our code of civil procedure.

In *Doleman v. Levine,* 295 U. S. 221 (55 S. Ct. 741, 79 L. Ed. 1402), the court, in referring to the right of subrogation, stated:

"The right of the employer to reimbursement from the recovery is derived from his subrogation, under section 33 (b) of the compensation act, to the rights of the dependent widow to whom he is bound to pay compensation. Apart from statute, the indemnitor's right by subrogation to stand in the place of his indemnitee, who is entitled to a part only of the proceeds of a single cause of action, does not carry with it any authority to maintain the action in his own name."

The Idaho law which subrogates the employer to the rights of his injured employee in a case of this nature can not have the effect of changing the mode of procedure in the state of Oregon.

In the case at bar the appellant states many times in its brief that the decisions from other jurisdictions are of little value in solving the question here before us, for the reason that the statutes of the various states differ materially in wording. The truth of this assertion is indeed apparent when an attempt is made to reconcile the decisions of different states. The appellant, however, contends that the constitution of the United States requires the courts of this state to give full faith and credit to the laws of Idaho. It is further argued that Personius can not be permitted to maintain this action without the Oregon courts ignoring this mandate. *Bradford Electric Co. v. Clapper,* supra, is cited in support of this contention. In that instance no third party was concerned. The court there held that the

provisions of the compensation law of Vermont entered into the contract of employment, and that as to recovery for the accidental death of the workman the Vermont act was controlling, although the action was brought in the state of New Hampshire.

Since the decision in that case was rendered, the supreme court of the United States has handed down its opinion in *Alaska Packers Ass'n v. Industrial Accident Commission,* supra, in which it is held that the full faith and credit clause of the constitution does not deny to any state "the right to apply in its own courts a statute of the state, lawfully enacted in pursuance of its domestic policy". See, also, in this connection, *United States Casualty Co. v. Hoage,* supra; *Broderick v. Rosner,* 294 U. S. 629 (79 L. Ed. 1100, 55 S. Ct. 589), and *Aetna Life Insurance Co. v. Moses,* 287 U. S. 530 (77 L. Ed. 477, 53 S. Ct. 231, 88 A. L. R. 647).

We are of the opinion that there is no valid reason for preventing the plaintiff from maintaining an action in the courts of this state to recover for the injuries suffered by him through the negligence of the defendant.

■ During the introduction of the deposition of Dr. Lauerbaugh the defendant objected to the following question: "Is it possible, Doctor, that the urine may be normal on some occasions and on some other occasions that there would be evidence of blood?" The objection was that the question went "into the realm of possibilities rather than probabilities". The same deponent was also asked: "Based upon your knowledge of human anatomy and your experience, would it be possible for a condition such as I have related to you to develop from a traumatized kidney?" To this a similar objection was interposed. In support of the contention that an expert witness should state the probable, and not the

possible, result of a condition indicated, counsel for defendant rely upon the cases of *Rugenstein v. Ottenheimer,* 70 Or. 600 (140 P. 747) ; *Ahonen v. Hryszko,* 90 Or. 451 (175 P. 616, 177 P. 63) ; *Madden v. Columbia & Nehalem River R. R.,* 101 Or. 562 (200 P. 1038) ; and *Frint v. Amato,* 131 Or. 631 (284 P. 183).

The evidence sought to be elicited by these questions was not for the purpose of proving the effect of the injury suffered by the plaintiff, but to show whether or not it was possible for certain described conditions to exist. The record discloses that at times the urine was free from blood, and normal, and at other times, according to the plaintiff's testimony, there would be blood in it. An affirmative answer to the first question asked the physician would tend to show that both conditions could exist.

In answer to the second question the deponent stated: "Not directly from the trauma to the kidney. The kidney itself would not be responsible for that, but the responses of the sympathetic nervous system would be responsible for it." That answer was positive and definite, and not speculative.

No prejudicial error was committed by the trial court in overruling defendant's objection to the questions hereinbefore quoted. There is nothing in the authorities relied upon by the defendant inconsistent with this holding.

■ The plaintiff's testimony was to the effect that shortly after the accident and as soon as Carter, the driver of the truck, reached the bus, plaintiff asked him if he had flares or flags of any kind, and Carter answered that he had not. Plaintiff then asked him where his lights were, to which question Carter did not reply. One of the bus passengers testified that the driver of the bus, plaintiff here, said to Carter, "My

God, man, where is your signal?'' No response to this was heard by the witness.

The appellant claims that the time of the accident was so remote from these conversations that the statements were not admissible as part of the *res gestae*. The record is not entirely satisfactory as to the amount of time that had elapsed between the collision and the plaintiff's exclamations, but it appears that the same were spontaneous expressions ''in relation to, and under circumstances of, stress and excitement'', and hence were ''not the result of reason and reflection''. Plaintiff's utterances were not made after any appreciable lapse of time following the accident, and were therefore admissible as part of the *res gestae*: *Moulton v. St. Johns Lumber Co.*, 61 Or. 62 (120 P. 1057); *Chesapeake & Ohio Ry. Co. v. Mears*, 64 Fed. (2d) 291, and cases there cited in opinion and footnote; 3 Jones on Evidence, (2d Ed.), §§ 1202-1205, inclusive; *Judd v. Oregon Short Line Ry. Co.*, 55 Idaho 461 (44 P. (2d) 291); Anderson, An Automobile Accident Suit, §§ 539-543, inclusive.

■ The appellant predicates error on the refusal of the court to grant the following requested instruction:

''I instruct that if you should find that the plaintiff was negligent in failing to have said motor bus under control or to have chains on its wheels so as to stop the said bus and prevent the collision with the disabled truck and trailer of the defendant, and that such negligence contributed proximately to the accident and the damages complained of, then and in that event your verdict should be for the defendant.''

The court, after stating that the defendant alleged that the plaintiff himself was negligent, in part charged the jury as follows:

''It is the duty of one operating a vehicle to at all times keep a proper lookout to avoid a collision. By

that we mean the exercise of such care as an ordinarily prudent person would exercise to prevent accidents. The degree of care, of course, is always commensurate with the conditions obtaining. It is also alleged that the plaintiff failed to have his car under control. By that we mean that he should also operate it and have it in such condition that he can stop it with reasonable celerity, in the light of existing circumstances, to prevent a collision.''

Elsewhere in its instructions the court told the jury that if it found that the plaintiff himself was negligent in one or more of the particulars indicated, ''and that such negligence contributed, however slightly, to bring about the accident'', the plaintiff could not prevail.

These instructions and others included in the court's charge fully covered the point which the defendant apparently attempted to make by its requested instruction. The requested instruction, moreover, was erroneous in that it assumed that if there had been chains on the wheels of the bus that vehicle could have been stopped in time to prevent the collision. There is no evidence tending to prove that, had there been chains on the wheels of the bus driven by plaintiff, the bus, under the facts in the case, could have been more readily stopped. The defendant did have chains on the drive wheels of its truck, but no apparent benefit resulted from such equipment. It is our opinion that the matters in issue were thoroughly covered by the court's instructions and that no error was committed in its failure to give the defendant's instruction as requested.

We have considered the remaining assignments of error and found that they are without merit. The judgment appealed from is affirmed.

CAMPBELL, C. J., and BEAN and RAND, JJ., concur.