Argued July 6, affirmed October 11, 1921.

## MADDEN *v.* COLUMBIA & NEHALEM RIVER RAILROAD, A CORPORATION.

### (200 Pac. 1038.)

**Damages—Instruction not Erroneous as Allowing Recovery for Possible Injury.**

1. In an action for personal injuries, *held,* that instructions were not erroneous as permitting the jury to compensate plaintiff for "possible permanent injuries."

Appeal and Error—No Complaint of Submission of Permanent Injuries to Jury in Absence of Objection or Request to Withdraw Question.

2.  In an action for personal injuries, *held,* that defendant could not complain of instruction authorizing recovery for permanent injury, in view of absence of an objection to the submission, or any request on behalf of defendant to withdraw the question.

Appeal and Error—Submission of Permanent Injuries Harmless in View of Verdict.

3.  Where verdict did not show that jury gave damages for permanent injuries, error in submitting that question to jury was harmless.

Damages—Fifteen Hundred Dollars not Excessive for Injury to Leg.

4.  A verdict for $1,500 *held* not excessive for painful injuries to leg causing plaintiff to be confined in bed and wheel-chair in hospital for three weeks and requiring use of crutches in walking for some time thereafter.

Damages—Reasonable Probability of Permanent Injury Submitted to Jury.

5.  In a personal injury action, if from the testimony it can be said that there is a reasonable probability of an injury being permanent, then the question may properly be submitted to the jury.

From Columbia: J. A. EAKIN, Judge.

Department 2.

This is an action for a personal injury. A verdict was rendered in favor of the plaintiff for the sum of $1,500. Defendant appeals from the resulting judgment.

The defendant operates a logging railroad from Kerry on the Columbia River into the timber region of the Nehalem basin. It runs on its tracks a small gasoline passenger-car called a jitney. On the date of the accident the plaintiff was a passenger on this car. Another train made up of logging trucks was picking up logs which had fallen from logging trains alongside the track. Approaching the siding where the jitney was to pass this work train the motorman of the jitney applied the brakes to bring his car to a stop, but the rails were slippery from frost, so that

the wheels of the jitney slipped upon the rails and the front of the jitney collided with a projecting log on one of the trucks, the log passing through the front window of the jitney. Madden was hit on the back and left hip by the log, thrown to the floor unconscious, and in some manner the calf of his right leg was cut open. After the wreck first aid was administered to Madden, two stitches being taken in his leg, and he was transported to a Portland hospital. He was confined in bed and in a wheel-chair in the hospital for about three weeks. After his discharge from the hospital he walked with the aid of crutches. He received daily treatments for three weeks more at the offices of the railroad company's doctors, after which he failed to call further because one of the doctors, as the doctor states facetiously, threatened to remove Madden's knee-cap if he did not immediately recover. The allegation in the complaint in regard to the injury, paragraph 4, is as follows:

"That as a result of the carelessness, recklessness, and negligence of the defendant, as above set forth, the plaintiff herein was injured by having the calf of his right leg torn and lacerated so that the leaders of said leg sloughed away whereby plaintiff will be permanently injured in said leg; plaintiff's left hip was injured and plaintiff was bruised all over his body and caused to remain in a hospital for nineteen days and is at the time of the filing of this complaint unable to work and plaintiff herein believes he will be unable to work for a long period of time to come and be permanently injured."

He demands damages in the sum of $3,000. At the time of the trial no physicians were called on Madden's behalf. He testified as to his condition to the effect that he got a cane and tried to get along with-

out crutches, and could not do it; that his leg would hurt him so he could not walk; and that his hip bothered him every once in a while.

"Q. How often does it bother you?

"A. Well, according to how much I walk. If I walk to-day for an hour or two, why then it would bother me.

"Q. That is, if you walked that without crutches.

"A. Oh, with the crutches.

"Q. It bothers you even if you walk with crutches?

"A. Yes, sir. * *

"Q. What kind of pain is it, if you can tell—it is rather a hard thing to do to describe that, but describe it the best you can the kind of pain that you feel in your hip when you try to walk.

"A. Well, it just takes me, sometimes sort of a sharp pain, sometimes right here in the groin and it just gets numb, pains.

"Q. In the groin?

"A. Yes.

"Q. And other times it is in the muscle of your thigh?

"A. Right in here, in this thigh, right up here (indicating). * *

"Q. And the pains that you feel in the calf of your leg, if you will tell us just what they are like?

"A. This leg over here (indicating the right leg).

"Q. Yes.

"A. Well, them pains that you can't—sometimes I can't bend that leg and when I do go to bend it, why it hurts me."

The testimony of the doctors on behalf of the defendant indicated that the injuries of the plaintiff were not of a permanent character.   Dr. Slocum, witness for defendant, testified in part as follows:

"Q. Now, if he would use that a little day by day, if he had for the last week stretched it a little, used it a little day by day, stretched his muscles, would

not all pain disappear as a result of that surface irritation?

"A. I think that this pain gets to be psychological after a while. They are the kind of cases that Christian Science would do a whole lot for—they are mostly up in his head—I don't think that he has any pain there. He has no anatomical reason for it. There are no nerves along that side—they come in a little bit farther forward and there are no tendons— just simply the muscles and the skin there, that is all."

Affirmed.

For appellant there was a brief over the names of *Mr. H. B. Beckett* and *Messrs. Veazie & Veazie,* with an oral argument by *Mr. Beckett.*

For respondent there was a brief over the name of *Messrs. McDougal & McDougal,* with an oral argument by *Mr. E. L. McDougal.*

BEAN, J.—The only assignment of error presented for consideration upon this appeal relates to an instruction of the court arising in the following manner. The trial court explained the issues and defined negligence, and the degree of care necessary to be observed by a common carrier of passengers. As to the measure of the damages the court charged the jury as follows:

"The measure of damages in this case is the injury and loss actually suffered and sustained by reason of the negligence of the defendant railway company.

"The plaintiff, if you find he is entitled to anything from the evidence, is entitled to such sum or sums of money as will fully compensate him for all loss of wages and pain and suffering endured by him.

"In estimating damages, it is proper to consider loss of time and whatever bodily pain the damage may have caused to the plaintiff.

"If you find that the plaintiff did suffer pain on account of the injuries, and if you further find from the evidence, that the injuries of the plaintiff, Martin Madden, are of a permanent nature, you should compensate him by finding for the plaintiff such a sum as will compensate the plaintiff on account of the permanency of his injuries and the consequent decrease in his earning powers."

As shown by the bill of exceptions, after the instructions to the jury counsel for defendant saved an exception in the following language:

"Mr. Veazie: If the court please, I desire to except on behalf of the defendant to the instructions relating to possible permanent injuries on the ground that I doubt whether there be evidence in the case which would justify a finding of permanent injury."

1. As we understand the objection to the charge to the jury, the meaning intended to be conveyed to the mind of the court was that there was a doubt in the mind of counsel as to whether there was evidence in the case which would justify the jury in a finding of permanent injury. The learned counsel did not express a doubt that the court should submit the question of permanent injury to the jury, or make any objection thereto. As to the language "relating to possible permanent injury," we have read the entire charge of the court to the jury, and do not find the word "possible" therein, nor that the jury was allowed to compensate plaintiff for a possible injury. On the other hand, the jury was instructed that if they found for the plaintiff, the measure of damages was the injury and loss actually suffered.

2, 3. It appears there was a direct conflict in the testimony between the expert witnesses on behalf of defendant and the plaintiff himself, as to the extent

of his injuries. Plaintiff's injured leg was exhibited to the jury, and his back and hip examined and manipulated by the doctors, both of whom were of the opinion that the injuries were not permanent, although one of the physicians testified that where symptoms are subjective it necessarily follows that the doctor must be governed by the patient's statements, if any cause can be found for the symptoms. Therefore under the allegations of the complaint, in the absence of an objection to submitting the question of a permanent injury to the jury, and in the absence of any request on behalf of defendant to withdraw from the jury the question of permanent injury, we do not think there was any error on the part of the trial court in so submitting the question. If there was any error in this connection it was invited or sanctioned on behalf of defendant. From the amount of the verdict it does not appear that the jury found the plaintiff was permanently injured. Therefore the defendant has no reason to complain in this regard.

4. The testimony tended to show that plaintiff was seriously hurt by being struck by the log. We cannot say as a matter of law that the damages awarded by the jury are excessive.

We approve the rule as stated by Mr. Justice Brown in *Galveston etc. Ry. Co.* v. *Powers,* 101 Tex. 161, 164 (105 S. W. 491, 493):

"Neither expert witnesses nor the jurors may be turned loose in the domain of conjecture as to what may by possibility ensue from a given statement of facts. The witness must be confined to those which are reasonably probable, and the verdict must be based upon evidence that shows with reasonable

probability that the injury will produce a given effect.''

5. If from the testimony it can be said that there is a reasonable probability of an injury being permanent then the question may properly be submitted to the jury: *Rugenstein* v. *Ottenheimer,* 70 Or. 600, 608 (140 Pac. 747); *Ahonen* v. *Hyszko,* 90 Or. 451, 459 (175 Pac. 616, 177 Pac. 63).

We have carefully examined the cases cited by defendant, among them *Lang* v. *Camden Iron Wks.,* 77 Or. 137 (146 Pac. 964); *Henry* v. *Postal Telegraph Co.,* 100 Or. 179 (197 Pac. 258); *Albright* v. *Keats,* 85 Or. 134 (166 Pac. 758). We find no conflict in the record of the trial of the present case with the rules enunciated in the cases mentioned.

Finding no error in the record, the judgment of the Circuit Court is affirmed.   AFFIRMED.

BURNETT, C. J., and JOHNS and BROWN, JJ., concur.