Argued April 1; affirmed December 9, 1930

# HECKER *v.* UNION CAB CO.

(293 P. 726)

*Hall S. Lusk* of Portland (Emmons, Lusk & Bynon of Portland on the brief) for appellant.

*Arthur I. Moulton* of Portland (Lord & Moulton of Portland on the brief) for respondent.

BEAN, J.   The accident occurred on Hoyt street at the intersection of Tenth Street in the city of Portland on December 12, 1927, at about 6:25 o'clock a. m., while it was yet dark.  Plaintiff was walking north on the west side of Tenth street and the taxicab was proceeding west on Hoyt Street.  The complaint alleged that the defendant was negligent in operating its taxicab at an excessive rate of speed, to-wit, in excess of twenty miles per hour; in failing to observe plaintiff; in failing to have its automobile under proper control; in failing to sound a warning, and in failing to give plaintiff the right of way.  The answer admitted the accident, denied the charges of negligence and alleged that plaintiff was guilty of contributory negligence in crossing Hoyt street at a place other than that provided for the use of pedestrians, and in failing to keep a proper lookout for traffic.  The reply put in issue the affirmative matter of the answer.

Defendant does not contend that there was insufficient evidence of defendant's negligence to take the case to the jury.  At the appropriate time defendant moved for a nonsuit and also moved for a directed verdict on the ground that plaintiff's own testimony showed that he had not used reasonable care for his safety, in that he had failed to keep a proper lookout while crossing

the street. Defendant reserved exceptions to the denial of these motions by the trial court and on this appeal assigns the rulings as error.

■ The testimony indicated the following facts: plaintiff, a man of seventy-one years of age at the time of the trial, had worked for several years for the Spokane, Portland & Seattle Railroad Company as a car inspector. He went to work at seven o'clock in the morning, and was in the habit of coming to the corner of Tenth and Hoyt streets and meeting a man with whom he went in a car to his place of employment for the day. On the morning of the accident, he came out of a restaurant at this corner and started straight across the street in line with the sidewalk. When about to leave the curb he looked in both directions and saw no approaching vehicles. He testified that he was looking all the time and when he was in the middle of the street he looked but saw no vehicle approaching. He proceeded until he was within about three feet from the sidewalk, when he was hit by the taxicab. The distance he was from the curb at the time he was hit is estimated from three to eight feet. He was struck on the right side by the fender of the automobile and carried thirty or forty feet.

Leon C. McReynolds, a witness for plaintiff, said that he stood on the curb in front of the restaurant from which plaintiff came and watched him cross the street. He said that plaintiff started straight across in line with the sidewalk; that he saw the lights of the taxicab about half a block from this intersection at about the time plaintiff left the curb and started to cross the street; that he observed the taxicab from that time forward and it was going between twenty and twenty-five miles per hour, and did not slow up until

it struck the plaintiff; that no horn was sounded; that when he first observed the taxicab plaintiff was about ten or fifteen feet out in the street from the curb.

The statute provides, in effect, that the driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except the intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices: Oregon Code 1930, § 55-601 (Laws of 1929, ch. 186, p. 182). The movement of the traffic at this intersection, which was in the business district of the city, was not so regulated.

The circumstances indicated by the testimony, that plaintiff, while crossing the street, as he had a right to do, looked for approaching vehicles when he first started to cross the street, and thereafter, and particularly when he was in the center of the street, did not see any motor vehicle within such a distance as to endanger the act of crossing, and in fact did not see any at all, does not warrant the court, as a matter of law, to find that he did not keep a proper lookout or was guilty of contributory negligence.

It was a question for the jury to determine whether plaintiff, when he approached the intersection, as the circumstances reasonably appeared to him at that time, acted as a person of ordinary caution and prudence in determining whether he could cross with a reasonable degree of safety. If the jury believed from the evidence that plaintiff could not reasonably apprehend danger, in view of all the circumstances as they appeared to

him, and that he exercised reasonable care for his own safety in looking for the approach of vehicles while he was making the crossing, then the jury was warranted in finding that plaintiff was not guilty of contributory negligence.

We read in 2 Blashfield, Cyc. of Automobile Law, p. 1020, as follows:

"The question as to whether a pedestrian, who is struck by an automobile or other motor vehicle, at or near a regular street crossing, or at a place customarily used as a crossing, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury."

■ Even though plaintiff had seen the lights of the automobile when they were about half a block, or about 150 feet, away, would not warrant the court in holding, as a matter of law, that he was negligent. Plaintiff would have had the right, if he had seen an automobile approaching at such a distance, to assume that defendant would obey the law and yield the right of way to plaintiff. He was not required to remain on the south side of Hoyt street: *Casto v. Hansen,* 123 Or. 20 (261 P. 428), and cases there cited; *Stryker v. Hastie,* 131 Or. 282 (282 P. 1087). The jury evidently found it difficult to account for the accident except for the rate of speed maintained by defendant's driver of the taxicab.

■ We think the present case comes within the usual rule that whether due care was exercised by plaintiff in crossing the intersection or he was guilty of contributory negligence, which would defeat his recovery, was a question of fact for the jury. The statute does not confer upon the pedestrian, in making such a crossing, the absolute right of way: *Paulson v. Klinge,* 92 N. J. Law, 99 (104 Atl. 95); Notes, 21 A. L. R. 974. All

persons using the public thoroughfares must have due regard for the rights of others: *Ward v. Clark*, 232 N. Y. 195 (133 N. E. 443). There was no error committed by the court in refusing to grant the motions for non-suit or directed verdict.

Defendant, as we understand, seeks to apply the rule pertaining to railroad crossing cases. The management of railroad trains at highway crossings is necessarily governed by a different rule than that applicable to cases where pedestrians are struck by an automobile at street intersections.

■ Defendant predicates error on the instruction of the court submitting the question of permanent injury to the jury. The court, in charging the jury in regard to damages, used the following language:

"In doing that you have the right, and it is your duty, if you reach that stage of the case, to consider the nature and character of the injuries, if any, sustained by the plaintiff, whether they were temporary or permanent, his physical condition both before and since the injuries alleged, the physical or mental pain and suffering, if any, plaintiff may have undergone and will in the future undergo because of such injuries."

The contention of defendant is that the testimony of the doctor who treated plaintiff does not state that plaintiff was permanently injured. The doctor did not state in so many words that plaintiff was permanently injured. The evidence tended to show that plaintiff was injured on December 12, 1927, and remained in the hospital until January 27, 1928; that when he was admitted to the hospital he was in a state of shock; that his pulse was weak and he suffered from hematoma of the leg, which is defined as a blood tumor, including rupture of the muscles; that he had severe

bruises and contusions on his chest and abrasions and bruises about his head. It appears that the doctor who attended him at the hospital had not seen him or examined him since and made no attempt to give an opinion of his condition at the time of the trial. Plaintiff testified that after leaving the hospital he was obliged to remain at home for six months; that his leg which was injured continued to cause him great pain until the time of the trial, in July, 1929; that he returned to work some six months after he was injured, but he was unable to return to his old employment because of the pains from which he suffered and he was obliged to accept employment paying fifty dollars per month less than his former employment; that when the weather changed, his leg swelled up and he was obliged to take light work, checking and supplying the baggage cars and mail cars; that his hearing was very bad and that it had not been so prior to the accident, and that he was not so well at the time of the trial as before the accident. Plaintiff did not claim that he was totally disabled.

■ It therefore seems that while the jury were not told that plaintiff was permanently injured, all the facts relating to plaintiff's injury and condition were before the jury and we think it was for them to determine whether there was a probability of the injury being permanent. In the very nature of affairs, permanency of injury, future suffering and the like, are problematical and speculative in most cases, except those where loss of bodily members is involved, and at least a probability of such elements of damage must be shown to exist in order to recover for permanent injuries: *Rugenstein v. Ottenheimer,* 70 Or. 600 (140 P. 747); *Barron v. Duke,* 120 Or. 181, 195 (250 P. 628).

■ We are not ready to enunciate the rule that the fact, as to whether in such a case plaintiff has sustained permanent injuries, must be established by the testimony of an expert medical man.

■ In the present case the testimony tended to show that the plaintiff, between the time of the injury and the date of the trial, lost in wages and reduction of wages and expended for hospital fees and nurses, on account of the injury, an aggregate sum of about $1,800. The recovery was $3,300, leaving an allowance of only $1,500 as compensation for pain and suffering. While the word "permanent" appears in the instruction to the jury, the verdict does not indicate to us that they included in their verdict compensation for a permanent injury, and whether the instruction was strictly applicable or not we are satisfied that the defendant was not injured thereby; that the case should not be returned to the trial court for a new trial on that account, and that it would not, in all likelihood, be advantageous to the defendant to have such proceedings taken: *Madden v. Columbia & Nehalem River R. R.,* 101 Or. 562 (200 P. 1038), is very much in point upon the question of evidence of permanent injury, and also the observation in that case, that the amount of the verdict does not show that an allowance was made for permanent injuries, is a fair guide to us in the case in hand.

Finding no reversible error in the record, judgment of the trial court is affirmed.

KELLY, J., took no part in the consideration of this case.