Argued July 15, affirmed October 7, petition for rehearing
denied November 4, 1959

# ARNEY, ADMINISTRATOR *v.* CITY OF NORTH BEND
# GOHN, ADMINISTRATOR *v.* CITY OF NORTH BEND

344 P. 2d 924

*W. A. Johansen* argued the cause for appellant. On the brief were McKeown, Newhouse and Johansen, Coos Bay.

*James A. Norman,* Coos Bay, and *Thelma Chapman Fowler,* Eugene, argued the cause and filed a brief for respondents.

Before McALLISTER, Chief Justice, and PERRY, SLOAN and CRAWFORD, Justices.

SLOAN, J.

These two cases were consolidated for trial and appeal. Each is an action for wrongful death. The two decedents were killed when an automobile in which they were occupants was driven off the end of a wharf, owned and maintained by defendant, into the

waters of Coos Bay. The facts are the same as those in *Hise v. City of North Bend,* 138 Or 150, 6 P2d 30. Gohn was the driver of the car; Arney, the only other occupant. With the exception of the allegations in that particular the pleadings are identical. The jury returned a verdict for each plaintiff and defendant appeals from the resulting judgments.

Virginia Avenue, in North Bend, is one of the main streets in the business section of that city. It extends in a general easterly and westerly direction. At the easterly termination it forms the approach onto the wharf in question. Pictures introduced in evidence taken several blocks to the west of the wharf portray the scene. From the center of the business district, where the pictures were taken, the street descends at a gentle grade for some two or three blocks until it reaches and crosses the tracks of the Southern Pacific railroad. For the distance just mentioned the street is the usual curbed street found in most cities of similar size. After crossing the railroad tracks the street is uncurbed and somewhat narrower but appears to have the same asphalt surface. The street in this form extends toward the east and the bay for about a block where it joins the plank surface of the wharf. The wharf is about 125 feet wide at this point. Without the aid of visual assistance we can best describe the whole length of the street by saying that it appears to be a straight, continuous street from the center of the business district to the extreme edge of the wharf above the waters of Coos Bay.

Daylight, in which the pictures were taken, of course, reveals the termination of the street at the edge of the wharf and would disclose to one approaching the wharf the hazard to be encountered. It also makes it easy to visualize the nighttime hazard exist-

ing at the end of the wharf for the unwary stranger. It is apparent that if one not familiar with the street should drive to its end in the hours of darkness he would find no particular landmark or boundary to indicate the transition from street to wharf. In this case the accident happened about 6:30 p.m. in the drizzly darkness of an evening in January. There were no witnesses to the accident and no one knows the circumstances by which it happened. There is no evidence that either of the victims was familiar with the perilous nature of the street and its abrupt termination. The adequacy of the warnings of danger, the lights and the barrier constructed on the outer edge of the wharf raise the issues presented during the trial of the instant case.

This barrier was a heavy 12″ x 12″ timber which was secured to the surface of the wharf by heavy bolts and braced by 6″ x 16″ timbers. The barrier was erected about 1951. It was unpainted. The area was illuminated by two street lights, one described as having the power of 20,000 lumens; the other, 1,000 lumens.

The defendant submits eight assignments of error. The first assignment complains of the failure of the trial court to allow defendant's motion to strike this specification of negligence from each of the two complaints:

"(c) In failing to maintain a barricade at the easterly edge of the wharf adequate to stop moving automobiles."

When the trial judge instructed the jury he read this, as well as the other specifications, verbatim. He then gave the usual instruction that it was not necessary for the jury to find the defendant guilty of all the specifications of negligence alleged in the complaint. It was sufficient if the jury found the defendant city

guilty of any one of the acts or omissions alleged. The two complaints were taken to the jury room. No other instruction limiting this allegation was given. The defendant did not, at any other time, move to withdraw the allegation from the consideration of the jury; it took no exception to the reading of the allegation to the jury by the court and it took no exception to the court's instruction that the jury could find for the plaintiffs if the jury found any of the plaintiffs' specifications of negligence to be true.

■ We agree that the allegation is erroneous and should have been stricken. The correct rule with reference to the sufficiency of a barrier is contrary to the challenged allegation:

> "It is the general rule that the municipality is not bound to maintain a barrier which will stop a motor vehicle, as, on account of the great weight and usual speed of motor vehicles today, such a requirement would be manifestly absurd." Babbitt, Motor Vehicle Law (4th ed) 329, § 487.

This rule appears to be uniformly followed. "The political subdivision responsible for the maintenance of the particular highways in question is under no obligation to erect rails or barriers proof against any degree of force." 173 ALR 644. 4 Berry, Automobiles 475, § 4.260.

■■ However, we must consider that the motion to strike was the only objection made by defendant. The court's attention was not otherwise directed to the error. The defendant did not give the court any other opportunity to correct what could have been an oversight on the part of the court. It is not error alone that this court will notice but error that is properly called to the trial court's attention so as to give to the trial

court adequate opportunity to correct the error before the case is submitted to the jury. *Mills v. Liquidators,* 206 Or 212, 218, 288 P2d 1060. When the defendant failed to request that the court withdraw the allegation from the consideration of the jury it waived its right to assert error on this assignment. *Madden v. Columbia & Nehalem River R. R.,* 101 Or 562, 568, 200 P 1038. See also *Bay Creek Lbr. Co. v. Cesla,* 213 Or 316, 322 P2d 925, 324 P2d 244; *Voyt v. Bekins Moving & Storage,* 169 Or 30, 119 P2d 586, 127 P2d 360; *Parker v. Norton,* 143 Or 165, 171, 21 P2d 790. These cases support the rule that a party may not assign error on appeal to this court which does no more than recite the failure of the trial court to allow a preliminary motion to strike allegations from a pleading.

■ The defendant assigns error for the failure of the court to sustain its motion for nonsuit and directed verdict. The evidence in support of other allegations in the complaint required jury determination of the sufficiency of the lights and warning signs, if any. There was conflict in the evidence as to these decisive issues as well as varying inferences to be drawn. It was not error to refuse to take the case from the jury.

The only other assignment worthy of mention questions the refusal of the trial court to limit the recovery, if any, to $1,000. Such a limitation is provided by a provision of the charter of defendant city. The charter provides:

"TORTS. In no event shall the city be liable in damages to any person for an injury to person or property caused by a defect or dangerous place in a sidewalk, crosswalk, street, alley, sewer, public ground, public building, drain, gutter, ditch, or way, unless the city has had actual notice prior to the injury that the defect or dangerous place existed

and a reasonable time thereafter in which to repair or remove it. In no case shall more than $1,000.00 be recovered as damages for an injury resulting from such a defect or dangerous place. No action shall be maintained against the city for damages growing out of such an injury unless the claimant first gives written notice to the council within 60 days after the injury is sustained, stating specifically the time when, the place where, and the circumstances under which it was sustained; and that he will claim damages therefor of the city in an amount which he specifies. Nor shall the action be maintained unless 30 days have elapsed after the presentation of this notice to the council."

It is to be observed that the limitation of liability is restricted to a "sidewalk, crosswalk, street, alley, sewer, public ground, public building, drain, gutter, ditch, or way."

■ This case presents a unique situation. We have already mentioned that *Hise v. City of North Bend*, supra, is a case that happened in the exact location and in the exact manner of the case at issue. The only factual difference was that in Hise the driver of the diving vehicle survived. The same limitation of liability was urged by the city in that case. At that time the charter was limited to "any sidewalk, street, avenue, boulevard, alley, court or place." In answer to the contention then this court, by Justice ROSSMAN, informed the city:

"* * *. And, hence, it necessarily follows that the municipality may properly be granted immunity from liability from their acts just like the state would be immune if they were acting directly for it. But when the municipality exercises its proprietary or corporate authority and engages in a business enterprise for the commercial advantage of those whose interests it serves, it possesses no

immunity from liability, in the absence of special exemption, but is subject to suit to the same extent as any individual similarly engaged. This important difference in the dual elements of the city's nature seems to be a proper matter for consideration when determining whether the word 'place,' if interpreted to mean 'wharf', would be ejusdem generis with street, boulevard, etc. We believe that it must be manifest from the foregoing that in addition to the self-evident difference between a wharf and a public thoroughfare there is such a very important difference in the municipal authority exercised in the establishment and control of a wharf as distinguished from a street that the two do not belong to the same class. We are convinced that 'place' was employed in this charter provision to include a common passageway employed for traffic purposes, and not the location of some private enterprise conducted by the city. We are particularly persuaded to this conclusion by the appearance of the word 'highway' in one of the sentences of this charter provision where it obviously was intended to include 'avenue, boulevard, alley, court or place,' and by the fact that all of the activities definitely named in this paragraph are of a governmental type. Moreover, the rules of construction, applicable to the interpretation of a charter provision which exempts a city from liability demand that doubts as to whether a particular case falls within the exemption should be resolved against the municipality * * *." 138 Or 158.

The court declined to define a "place" so as to include a wharf. We are now asked to define a "public building," "public ground" or a "way," to include the wharf. The validity of the charter limitation was not questioned.

The Hise opinion was given in 1931. The charter provision now urged upon us was adopted in 1950.

The defendant city was exceedingly well advised, therefore, that if it desired to limit its liability by reason of the operation of this wharf it should specifically say so. That it failed to specify "wharf" under these circumstances must be taken as tantamount to an expressed intention not to include the wharf in the charter; so much so, in fact, that we decline to split hairs and apply a dubious definition to the words actually used. We think it unwise to exhaust the lexigrapher's art to find a strained definition when the plain, unadorned word was available for use and the requirement that the limitation of liability must be specific was well known. The trial court properly refused to give the requested instruction.

Affirmed.