Argued February 20, affirmed March 22, reconsideration denied April 28, petition for review denied June 2, 1976

THE BERMAN CORPORATION, *Appellant,*

*v.*

STATE ex rel STATE HIGHWAY COMMISSION, *Respondent.*

(No. 75-846, CA 5094)

547 P2d 192

*James H. Spence,* P.C., Roseburg, argued the cause and filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Robert A. Holland, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

Plaintiff appeals from the trial court's ruling which sustained defendant's demurrer to plaintiff's inverse condemnation complaint on the ground that it failed to state a cause of action. Plaintiff declined to plead further and brings this appeal.

The ultimate question for our determination is whether a businessman-property owner is entitled to compensation under Art I, § 18, Oregon Constitution, for lost profits caused by temporary interference with public access to his place of business as a result of highway construction carried on by the state.

Plaintiff operates a service station near state highway No. 1 in Douglas County. As a result of defendant State Highway Commission's doing work on several roads in the area, access to plaintiff's business was restricted. Plaintiff alleges that the restricted access caused it to lose profits of $20,342.97 for the period from July 1974 to the time this action was brought in May 1975.[1]

Plaintiff brings this action on the theory of inverse condemnation alleging that the restriction of access constitutes a "taking" within the meaning of Art I, § 18. That section provides:

"Private property shall not be taken for public use * * * without just compensation * * *."

The Oregon Supreme Court most recently considered the question of what constitutes a "taking" within the meaning of the above constitutional provision in *Lincoln Loan v. State Hwy. Comm.*, 274 Or 49, 545 P2d 105 (1976). Plaintiff there alleged that the state had placed a "cloud of condemnation" over his property by its various public statements that plaintiff's property would eventually be condemned for a highway project. Plaintiff sought damages for diminution of the market value of his property as a result of

---

[1]Plaintiff makes no allegation that the state acted negligently in the manner in which it engaged in the construction work involved.

the state's actions. The Supreme Court reversed the decisions of the trial court and this court and held that plaintiff's complaint stated a cause of action and was not therefore subject to demurrer.

There is considerable broad language in *Lincoln Loan* which, arguably at least, supports plaintiff's position. For instance:

> "This court has long been committed to the rule that 'any destruction, restriction or interruption of the common and necessary use and enjoyment of the property of a person for a public purpose constitutes a "taking" thereof.' *Morrison v. Clackamas County,* 141 Or 564, 568, 18 P2d 814 (1933). * * *" 274 Or at 52-53.

However, we are of the opinion that the factual situation before us is significantly different than that before the Supreme Court in *Lincoln Loan.* A major difference we perceive is that *Lincoln Loan* involved an alleged decrease in the market value of plaintiff's land; whereas this case involves an allegation of lost profits caused by the temporary interference with the access to plaintiff's property. There is no allegation of a diminution of market value in the case at bar. We believe this to be a significant distinction. For this reason, among others which we need not set forth here, we are of the opinion that *Lincoln Loan* does not apply to the facts at bar.

Earlier cases considering the authority of a governmental entity to restrict access incident to traffic control are more directly on point than is *Lincoln Loan. Oregon Investment Co. v. Schrunk,* 242 Or 63, 408 P2d 89 (1965); *Highway Com. v. Ralston et ux,* 226 Or 143, 359 P2d 529 (1961). In *Schrunk* plaintiff property owner operated a parking lot in Portland. The city denied him access on one of the four sides of his property while allowing access on the remaining three sides. In ruling that the alleged restriction of access did not constitute a taking within the meaning of Art I, § 18, and that plaintiff's complaint was therefore subject to a demurrer, the court quoted *Transportation*

*Co. v. Chicago,* 99 US 635, 642, 25 L Ed 336 (1879), where the United States Supreme Court stated:

"\* \* \* [A]cts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. \* \* \*"

The same conclusion is called for where there is a temporary interference with the use of a property owner's land. Highway and street construction and repair necessarily disturb traffic flows and along with it access to businesses located in the area. This cannot be avoided, and to make the state or a local public agency liable for lost profits, as urged here, would place an impossible burden upon the taxpayers.

The position we take here is in accord with the great weight of authority from other jurisdictions. 2A Nichols, Law on Eminent Domain 6-251 to 6-252, § 6.4442[2] (3d ed rev 1975), and cases cited therein. Nichols clearly states the rule and rationale behind it to be:

"\* \* \* [W]hen access, though rendered difficult and inconvenient, is not wholly cut off, the owner is denied compensation. This is so even if there is such an injury to the use of the property for business purposes during the construction of the work as to materially affect the value of the leasehold interests, and this injury is due to the presence of structures in the street that would undoubtedly constitute a ground for compensation if they were maintained there permanently. This rule is hard to defend on principle. But the impossibility of constructing a subway or a sewer or of laying a water-pipe in the streets of the business section of a city without in some degree interfering with access to abutting property, and the consequent danger of a multiplicity of suits from the determination of which it might be impossible as a practical matter to exclude mere damage to business, have led the courts to reject claims of this character as a matter of public necessity."

The trial court did not err in ruling that the alleged

interference did not constitute a "taking" within the meaning of Art I, § 18.

Affirmed.