Argued March 21, affirmed as modified August 1, reconsideration denied
September 12, 1978, petition for review allowed February 13, 1979
(285 Or 195)

# STATE ex rel DEPARTMENT OF TRANSPORTATION, *Appellant,*

*v.*

# GLENN et ux, *Respondents.*

## (No. 23,472, CA 8990)

582 P2d 432

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Harold Banta, Baker, argued the cause for respondents. With him on the brief was Banta, Silven & Young, Baker.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

This is an appeal by the state following a verdict and judgment for the defendants in a condemnation proceeding. In addition to awards for the value of two parcels of real property taken and for loss of crops on the property acquired, defendants also received an award of "special damages" on account of injury to defendants' livestock alleged to have occurred as a result of having to move the stock from the condemned strip to another portion of defendants' ranch.

Prior to trial plaintiff moved to strike from defendants' answer an allegation of the "special damages" referred to above on the ground that

"* * * said matter is irrelevant and immaterial, and constitutes a pleading of noncompensable items of damage."

The trial judge denied plaintiff's motion. On appeal plaintiff's sole assignment of error is the denial of its motion to strike.

The central issue on appeal is as to the last award, namely, whether defendants were entitled to recover for damages to their livestock in this proceeding. In other words, the issue is whether a property owner has a right to recover in a condemnation proceeding damages resulting from the relocation of unattached personal property.

So far as we can determine, this is the first time that this precise question has been before the appellate courts of this state.

The essential facts may be summarized as follows:

Pursuant to a plan to modernize the Old Oregon Trail Highway, plaintiff, on various dates beginning with April 20, 1972, took physical possession of several parcels of defendants' ranch in Union County and proceeded to construct the highway.

In January 1974 cracks appeared in the soil supporting one of the grades that had been constructed on

an occupied parcel. The threat of landslide necessitated the occupation of an additional 20 acres alongside the right of way in order to construct a counterbalance designed to shore up the unstable slope. Plaintiff occupied the necessary parcel, built the counterbalance, and in November 1975, after construction was completed, instituted this eminent domain proceeding. Defendants answered and alleged, in addition to claims for compensation for the land taken, damages to their cattle operation, primarily the loss of calves, as "special damages."

At trial the jury awarded defendants $1,500 for special damages to livestock during 1974 caused by the construction of the counterbalance.

■ A preliminary question is presented by defendants' contention that plaintiff has waived the error, if any, assigned on appeal, citing *Arney, Gohn v. City of North Bend,* 218 Or 471, 344 P2d 924 (1959). *Arney* holds that a party may not assign as error on appeal a preliminary order denying a motion to strike where the moving party did not preserve the claimed error by calling it to the trial court's attention "so as to give to the trial court adequate opportunity to correct the error before the case is submitted to the jury." 218 Or at 475-76. Depending on the case, the preservation of the error may require objections to evidence offered in support of the allegation, a request that the allegation be withdrawn from the jury, and objections to jury instructions. The record before us is not complete and does not indicate that plaintiff took any steps to preserve the claimed error after filing its reply. Plaintiff does not contend that it did so.

■ The rule laid down in *Arney* is designed to obviate an unnecessary retrial of a case where the motion to strike should have been granted, and might have been remedied by bringing the error to the attention of the trial judge. This is particularly true where the trial judge is not the judge who ruled on the preliminary motion—it is the former's ultimate responsibility to

rule on such matters. *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707 (1955). We adhere to that rule.

■ In this case, however, the jury returned a special verdict segregating the various items of damage, so that if we were to decide that the questioned damages were not recoverable in this proceding, we could reverse that portion of the judgment based on the corresponding portion of the special verdict. No retrial would be necessary, no prejudice would result to the parties, and the ends of judicial economy would not be frustrated. We hold, therefore, that plaintiff's failure to preserve the claimed error in this case does not preclude our review.

■ On the merits, defendants' theory is that plaintiff took possession of the property, being defendants' feedlot, in the dead of winter and without sufficient notice to permit defendants to move their cattle to an adequate alternative site, and the resultant loss of calves, etc., amounted to a taking of their property for which they are entitled to compensation. While the pleading may fall short of articulating this theory, plaintiff did not move against it on this ground; further, after plaintiff's motion was denied, it filed a reply setting up an affirmative defense alleging adequate notice to defendants of plaintiff's need for, and intention to take, the additional land to construct a counterbalance. The case was tried and submitted on the issues so framed, and plaintiff may not raise the adequacy of the pleading for the first time on appeal.

Defendants argue that the trial judge did not err in overruling plaintiff's motion to strike; that defendants are entitled to recover these special damages, relying chiefly on *La Grande v. Rumelhart et al.,* 118 Or 166, 246 P 707 (1926).

■ The general rule regarding recovery of damages for injury to personal property is stated in 4A P. Nichols, Eminent Domain 14-294, § 14.2471[2] (rev 3d ed 1976), as follows:

"It has been held in the majority of states that the owner is not entitled to recover the cost of removing personal property or damages for injury to such property resulting from its removal, since such loss is not a taking of property. * * *"

Similarly, in 1 L. Orgel on Valuation under The Law of Eminent Domain 306, § 69 (1953), it is stated:

"The weight of authority is in support of the ruling which denies compensation to the owner for removal costs and breakages or other injury to personal property. * * *"

In *La Grande v. Rumelhart et al., supra* at 174, the court said that "all elements of damage directly flowing from the appropriation and the construction of the improvement should be determined." It is important to point out, however, that *Rumelhart did not* hold that the property owner was entitled to damages for injury to unattached personal property.

Some 30 years after *Rumelhart* the court in *Highway Comm. v. Superbilt Mfg. Co., supra,* refused to allow as damages the cost of disassembling, packing, crating and moving defendants' unattached personal property and reinstalling it in a new location. This is the leading case in Oregon on the limits of the recovery of consequential damages in condemnation cases.

As the state correctly points out in its brief in the instant case, there is no provision in either the Oregon Constitution or state law authorizing compensation for consequential damages to personal property. The Attorney General argues that therefore none should be allowed here. We agree. Those courts in other jurisdictions that have allowed recovery for damages resulting from relocation of personal property have done so pursuant to either constitutional or statutory provisions requiring compensation for property "taken or damaged" for public use. *See,* 2 P. Nichols, Eminent Domain 5-438, § 5.84 (rev 3d ed 1976).

We do not read *Rumelhart* to mean that damages resulting from the relocation of unattached personal

property are compensable as special damages in an eminent domain proceeding. The damages involved in *Rumelhart* were not consequential but were directly and physically against the property. Defendants' damages are actually personal to defendants and more analogous to the loss of profits which were rejected by the Supreme Court in *State Highway Com. v. Vella,* 213 Or 386, 323 P2d 941 (1958), and most recently by this court in *Berman Corp. v. State Hwy. Comm.,* 24 Or App 813, 547 P2d 192, *rev den* (1976).

In *Berman* plaintiff sought compensation on account of temporary interference with public access to its service station, with alleged resultant loss of profits by the station operator. We pointed out in *Berman* that this was not a "taking" within the meaning of the state constitutional provision that private property shall not be taken for public use without just compensation. Or Const. Art I, § 18.

Further, we see an important distinction between allowing compensation for the taking of the property owner's oysters in *Coos Bay Oyster Coop. v. Highway Com.,* 219 Or 588, 348 P2d 39 (1959), and the alleged injury to defendants' livestock. In *Coos Bay* there was an actual taking of the owner's oysters. In the instant case there was no such taking. The case at bar is much closer to *Superbilt,* where, as previously noted, our Supreme Court held that the cost of packing, crating and moving defendants' personal property to a new location was not recoverable, and *Berman,* discussed above, since here the crux of defendants' claim was for loss of profits to their cattle operation.

In the light of the above authorities, we conclude that defendants were not entitled to recover the damages alleged to have been sustained by their livestock, and that the award therefor must be set aside. It follows that the award for attorney fees must also be vacated.

Affirmed as modified.

**BUTTLER, J.,** dissenting.

The majority decides that defendants are not entitled to: (1) damages for the cost of removing unattached personal property from the real property taken; (2) damages for consequential injury to unattached personal property; (3) damages resulting from relocation of personal property; or (4) for loss of profits to their cattle operation. Since defendants do not claim damages on any of those grounds, I dissent and remind the majority to "look for the doughnut, not the hole."

Defendants' claim, alleged separately as one for "special damages," is that plaintiff's taking possession of the real property, which was defendants' feedlot, in the dead of winter and without sufficient notice to permit defendants to move their cattle to an adequate alternative site, resulted in cattle losses which amounted to a taking for which they are entitled to just compensation. After plaintiff's motion to strike the claim for "special damages" was denied, it filed a reply alleging adequate notice to defendants. By special verdict, the jury awarded defendants $1500 for "special damages to livestock during 1974 caused by the construction of the counterbalance."

Defendants concede the general rule to be that compensation is to be determined as of the date the action is filed, or possession is taken, whichever first occurs, since future damage, if any, is speculative. However, they contend that where, as here, construction on the condemned property is completed and the special damages have been ascertained before the proceedings are commenced, both the damages for the taking and special damages caused during construction may be litigated in the condemnation proceeding to avoid a multiplicity of actions. They rely on *La Grande v. Rumelhart et al.,* 118 Or 166, 246 P 707 (1926), and *Calif.-Pacific Utilities v. Barry,* 254 Or 344, 460 P2d 847 (1969).

In *Rumelhart,* the condemnation proceeding was commenced after construction of the highway was

completed. The defendants alleged that they had suffered certain "special damages" in addition to the value of the property taken and diminution in value to the remainder. The Supreme Court affirmed the trial court's denial of plaintiff's motion to strike those allegations, and in doing so, the court stated:

"* * * Among these causes for special damages are the destruction of fences, the expense of fencing the tract along the highway, the destruction of some fruit trees, a stone cellar used for coldstorage purposes in the summer and protection from the extreme cold in the winter; the deposit of large stones upon the garden and in the door yard, the shoveling of snow from the highway upon the premises of the defendants below the same, the inconvenience caused the defendants by travel on the highway from dust, fumes from gasoline and oil, and the annoyance from the lights of the automobiles flashing into the interior of the dwelling. It is the contention of the plaintiff that the defendants can recover in this action only the actual value of the land taken and the diminished value of the parts of the tract remaining. On the other hand, the defendants claim that inasmuch as the highway has been constructed they are entitled to recover in this action not only the actual value of the land taken, plus the difference in the market value of the parts of the tract remaining after the construction of the highway, but also such incidental damage as resulted to the defendants from the construction of the highway. There is conflict in the authorities. * * *" 118 Or at 172.

After discussing the apparent conflicts, the court held:

"We believe the better rule would be that where the improvement has been completed before the action has been brought to determine the damages, all elements of damage directly flowing from the appropriation and the construction of the improvement should be determined. We can see no good reason for compelling the person whose land is taken for a public improvement to resort to an independent action to recover damages incidental to but directly resulting from the construction. Where the action to condemn is tried before the actual appropriation, nothing but the value of the land taken and the injury to the remaining parts of the tract should be

considered. Other elements would be speculative. But where the actual appropriation has been made and the improvement constructed, the actual damages resulting can as well be ascertained and determined in an action to condemn as in a separate action on trespass.* * *" 118 Or at 174.

In *Barry,* the Supreme Court acknowledged the rule as set forth in *Rumelhart,* but held that defendant had not alleged a right to special damages in his answer, and therefore could not litigate them in that proceeding.

The majority, on the other hand, states that no compensation may be awarded for personal property that has not been affixed to the land. *Highway Comm. v. Superbilt Mfg. Co., supra.* That case, however, did not involve a loss of the personal property by virtue of the timing and manner of plaintiff's taking; Superbilt's contention was that the cost of disassembling, crating and moving machinery and equipment, and reinstalling it in a new location was part of the fair cash value of the real property taken. Defendants make no such claim here, and *Superbilt* is irrelevant. The majority also states that *State Highway Com. v. Vella,* 213 Or 386, 323 P2d 941 (1958), and *Berman Corp. v. State Hwy. Comm.,* 24 Or App 813, 547 P2d 192, *rev den* (1976), are contrary to defendants' position here. I see no relevance to either case. In *Vella,* defendant claimed that loss of profits in his business were a part of the depreciation in market value of the remainder of his property not taken; the Court properly held they were not. In *Berman,* an inverse condemnation case, we held that a temporary interference with a public access to plaintiff's service station did not constitute a taking.

A more apt analogy appears in *Coos Bay Oyster Coop. v. Highway Com.,* 219 Or 588, 348 P2d 39 (1959). In that inverse condemnation proceeding, plaintiff claimed compensation for the taking of planted oysters taken by defendant when it constructed a highway over the oyster beds. The Highway Commission had

already paid for the land (the oyster beds) and contended the planted oysters were a part of the real property already acquired. The Supreme Court held the planted oysters were personal property, for which compensation in addition to the value of the land must be paid. The majority would have us believe there is a "distinction" because "[i]n *Coos Bay* there was an actual taking of the owner's oysters. In the instant case there was no such taking." 35 Or App at 419. I respectfully submit that if there was an actual taking in *Coos Bay* it occurred not because the Highway Commission intended or desired to "take," but because it deprived the owner of the oysters by paving over the beds, to no benefit of the Commission. The same is true here: the plaintiff has deprived defendants of the cattle lost by virtue of the manner and timing of the taking of the real property pursuant to the power of eminent domain. The fact is that a taking pursuant to the power of eminent domain is subject to the obligation to pay just compensation, even though the taking may have been unintended or negligent.[1]

---

[1] *See Cereghino et al v. State Highway Com.,* 230 Or 439, 443, 370 P2d 694 (1962), which involved damage to plaintiff's land by flooding, where the Supreme Court said:

"These are not tort actions. * * * The plaintiffs are seeking to recover compensation for private property taken by the state for a public use. * * *"

*Cf. Lanning v. State Hwy. Comm.,* 15 Or App 310, 515 P2d 1355 (1973), in which plaintiff claimed damages resulting from the negligent failure to remove debris from the base of a bridge, which caused water to back up onto plaintiff's land. The state in that action contended, "plaintiffs have a remedy, if at all, in inverse condemnation and therefore no remedy in tort." 15 Or App at 318. This court responded:

"This theory of recovery [inverse condemnation] overlaps with liability in tort. Courts have allowed recovery on the theory of inverse condemnation in many instances as a means to avoid the concept of sovereign immunity. Note, *The Discretionary Exception and Municipal Tort Liability: A Reappraisal,* 52 Minn L Rev 1047, 1058 (1968); Van Alstyne, *Modernizing Inverse Condemnation: A Legislative Prospectus,* 8 Santa Clara Lawyer 1, 10 (1967); 3 Davis, Administrative Law Treatise § 25.05 (1958).

"While inverse condemnation may have developed as a remedy because of the existence of sovereign immunity, the removal of

The only question presented is whether defendants' theory is valid, not whether the evidence was sufficient to support it. It seems clear to me that the theory is valid, and the fact that it results in an unintended taking of personal property makes no difference. If the plaintiff had taken defendants' deep freeze plant without sufficient notice to permit a transfer of the frozen foods to another suitable facility resulting in a total loss of the frozen foods, can there be any doubt that plaintiff had taken defendants' property within the meaning of Art I, § 18, Oregon Constitution?[2] That provision is not limited to the taking of real property. *Coos Bay Oyster Coop. v. Highway Com., supra.* As the Supreme Court observed in *Tomasek v. Oregon Highway Com'n,* 196 Or 120, 143, 248 P2d 703 (1952):

> "The constitutional right and protection given the owner of property by art. 1, § 18, Oregon Const., supra, is unquestionably self-executing. It is an absolute right, and, for its violation, the injured person may have his remedy in common-law action in the absence of statutory provision therefor. This remedy should not be, nor is it, dependent upon legislative action. It is manifest that the legislature has no power to abrogate or deny a constitutional right, nor may a right that is constitutionally granted be taken away or rendered nugatory by failure of the legislature to act. * * *"

Here, the theory of defendants is that the state deprived them of their cattle under circumstances

sovereign immunity means, under appropriate circumstances, that alternative remedies now exist for a plaintiff whose property may have been damaged by the tortious act of a public body. The fact that plaintiffs may have an alternative remedy is no grounds for finding the remedy he has chosen should not lie." 15 Or App at 319.

[2] Art I, § 18, Oregon Constitution provides:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; provided, that the use of all roads, ways and waterways necessary to promote the transportation of the raw products of mine or farm or forest or water for beneficial use or drainage is necessary to the development and welfare of the state and is declared a public use."

which constituted a taking. Plaintiff may not avoid liability on the theory that although the property was taken, plaintiff did not intend to take it.

Because the only assignment of error is the denial of plaintiff's motion to strike defendants' allegations of "special damages," it is not necessary to decide whether such damages may be tacked on to the amount awarded as just compensation for the taking of the real property for the purpose of determining defendants' right to attorney fees and reasonable expenses under ORS 35.346(2).

I would affirm.