Argued and submitted September 22,
reversed and remanded December 15, 1980

VERRET et al,
*Appellants,*

*v.*

DeHARPPORT et al,
*Respondents.*

(No. 36893, CA 15760)

621 P2d 598

P. Herbert Schmidt, Portland, argued the cause and filed the brief for appellants.

Ralph Bolliger, Portland, argued the cause for respondents. With him on the brief was Bolliger, Hampton & Tarlow, P.C., Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE.*

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

Plaintiffs appeal from an order granting summary judgment in favor of defendants. We reverse and remand.

The record in this case is, unfortunately, extremely confused and incomplete. Our first task is to determine whether there was anything before the court on which it could base a summary judgment. When a party moves for summary judgment,

"* * * [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Former ORS 18.105(3).

In support of their motion, defendants relied on plaintiffs' complaint, "the entire file of the Yamhill County Circuit Court Case, *Dale DeHarpport and Ronald Traver, Plaintiffs vs. Jessie Irene Verret and LeRoy Verret, et al.,* No. 33721," the affidavit of their attorney, Ralph Bolliger, and a legal memorandum. Defendants claim the previous litigation between the parties, Case No. 33721, is a bar to the present suit.

Plaintiffs first argue that Bolliger's affidavit should not have been considered because under the Oregon State Bar's Code of Professional Responsibility, Bolliger was incompetent to act as both witness and attorney for defendants. Disciplinary Rule 5-101 provides in part:

"* * * * *

"(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

"(1) If the testimony will relate solely to an uncontested matter.

"(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

"* * * * *."

Even if we were to accept the proposition that possible disciplinary action renders an attorney's statements, considered on summary judgment, incompetent, application of

such a rule would be inappropriate in this case. Bolliger's affidavit merely recites the events of the previous litigation as a means of informing the court on defendants' claim of *res judicata.* The events recited could have been easily verified by consulting the trial file in the previous case. In this respect, there was little reason to believe that substantial evidence would be offered in opposition to the affidavit. Plaintiffs have not in fact attempted to controvert the statements made by Bolliger. The affidavit was made on personal knowledge and was properly considered.

The trial file in this case indicates that, in considering the motion for summary judgment, the only documents the trial court had before it were plaintiffs' complaint and Bolliger's affidavit. There is no indication in the record that the trial file of the prior case, No. 33721, was ever presented to the court as an exhibit. Neither we nor the trial court can take judicial notice of the file of another case. *See* ORS 41.410.

■ Plaintiffs submitted a combined counter-affidavit by which they alleged the accuracy, truthfulness and their personal knowledge of facts set forth in their "Memorandum of Law." The memorandum sets forth a variety of legal arguments and offers facts which tend to support the allegations of their complaint. Plaintiffs have appended copies of their affidavit and memorandum to their brief. Neither document appears in the record. They cannot be considered on appeal. *State ex rel Highway Div. v. Rosanbalm,* 31 Or App 717, 571 P2d 537 (1977), *rev den* (1978); 4A CJS, Appeal and Error, § 1209 (1957).

■ Finally, we turn to the complaint. Normally, when a motion for summary judgment is supported by affidavits or other sworn documents, the adverse party may not rest upon the allegations of the pleadings to raise issues of fact but must respond by affidavit or otherwise. *See* former ORS 18.105(4) and ORCP 47D.; *Gleason v. International Multifoods Corp.,* 282 Or 253, 577 P2d 931 (1978); *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 582 P2d 443 (1978). This rule applies to plaintiffs. Defendants have also relied on plaintiffs' complaint in making their motion for summary judgment. This is to be expected since defendants' legal argument consists of a claim of *res judicata.*

They do not rely on the complaint for its factual allegations, but rather to show that its allegations are within the scope of former litigation which has been concluded.

Plaintiffs' complaint does not raise issues of material fact for purposes of summary judgment. We do rely on it, however, to state the facts of this case for the benefit of the reader, particularly since the parties in their briefs have agreed to a statement of the same facts.

In October, 1975, plaintiff LeRoy Verret and defendants entered into a joint venture agreement for the purpose of developing a rock pit and sanitary landfill. The agreement states that Verret had already obtained the exclusive right to develop and operate a landfill on the proposed site. Under the agreement defendants were to pay $35,000 to Verret; in return plaintiffs executed in favor of defendants a note in the amount of $35,000 and a mortgage. The agreement provides that this $35,000 obligation shall be due and payable "if within one year from this date any and all permits necessary for the operation of the sanitary landfill have not been obtained." The agreement is silent about whether the $35,000 was to be repaid in the event the permits were obtained. The note is simply made payable in full one year after date. The mortgage provides that the mortgagor "will pay the said promissory note and all installments of interest thereon promptly as the same become due, according to the tenor of said note."

On August 30, 1976, defendants agreed not to foreclose the mortgage in consideration of plaintiffs' receipt of a small business loan. A letter from defendant DeHarpport to plaintiffs' attorney provides in part:

> "On behalf of the partnership of DeHarpport and Trevor, I do hereby agree * * * to withhold any collection or foreclosure proceedings with respect to our account with Lee and Jessie Verret until February 5, 1979; provided that Lee Verret will commence payment on our $35,000.00 note plus interest on February 5, 1977 in the amount of $350.00 per month and will pay the balance in full on or before February 5, 1979.

Defendants commenced foreclosure proceedings in April, 1977. The reason for the foreclosure does not appear in the record. Plaintiffs were served on or about April 30,

1977. Thereafter, defendants' attorney received a call from plaintiffs' attorney, who explained that no answer would be filed to the foreclosure suit since he knew of no defense. Defendants took a default decree against plaintiffs on December 6, 1977. Sale of the property was set for February 17, 1978, and the sheriff gave notice to plaintiffs by registered mail prior to that date. Defendants apparently were the purchasers at the foreclosure sale. An order confirming the sale of the real property was entered on February 21, 1978.

On March 13, 1979, the statutory time for redemption having elapsed, the sheriff issued his deed to the property to defendants.

On July 26, 1979, plaintiffs filed a motion in the foreclosure suit to set aside and vacate the default decree. The motion was denied. Because the trial file for the foreclosure suit was not made part of the record, we have no way of knowing the basis for the motion or the reasons for its denial.

Plaintiffs filed their complaint in this case alleging four "causes of suit." For their first cause of suit, plaintiffs allege that a complaint for foreclosure had previously been filed, that they had been served with a summons and complaint and that they had employed an attorney to represent them. They further allege:

"IV

"THAT INFORMATION and facts sufficient to prepare an answer setting forth a meritorious defense to said claim were delivered to plaintiff's then counsel, who assured plaintiffs that the matter would be taken care of within the required time.

"V

"THAT PLAINTIFF'S then attorney, through mistake, inadvertence and excusable neglect, failed to answer or otherwise appear in said cause for and on behalf of said Plaintiff, within the time allowed by law.

"VI

THAT DEFENDANTS through their irregularities and misconduct did also cause Defendants to fail to appear by executing an agreement in which they promised not to foreclose before February, 1979, marked 'Exhibit "A"' and

attached hereto, which Plaintiffs relied on, and by accepting payments upon the underlying mortgage which Plaintiffs relied on.

"VII

THAT JUDGMENT by default was taken against Plaintiffs in said Foreclosure proceedings on December 6, 1977.

"VIII

"THAT PLAINTIFFS were unable to exercise their statutory remedies against default judgments under ORS 18.160[1] and ORS 17.610[2] within the time allowed because of a serious illness which totally incapacitated Plaintiff LeRoy J. Verret. * * *

" * * * * *."

Plaintiffs pray for an order vacating the decree of foreclosure.

Defendants moved for summary judgment relying solely on the doctrine of *res judicata.* They claim that plaintiffs' motion to set aside the foreclosure decree in the previous litigation is a bar to plaintiffs' first cause of suit in this case.

A denial of a motion under ORS 18.160 to vacate a judgment or decree is a bar to a suit in equity for the same relief on the same grounds. *Marsters v. Ashton,* 165 Or 507, 107 P2d 981 (1940); *Miller v. Shute,* 55 Or 603, 107 P 467 (1910); *Thompson v. Connell,* 31 Or 231, 48 P 467 (1897). Although the statutory remedy is favored, failure to exercise it does not preclude a party from proceeding in an independent suit in equity to set aside the judgment or decree. *Mattoon v. Cole,* 172 Or 664, 143 P2d 679 (1943). Plaintiffs filed a motion to vacate the decree. However, because of the sorry state of this record, we are unable to tell the grounds for the motion or the reasons for its denial. We cannot conclude from the fact that plaintiffs filed a piece of paper entitled a motion to vacate in a previous case

---

[1] ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

[2] Former ORS 17.610 (present ORCP 64) permits the granting of a new trial after judgment. We are unable to discern how it applies to this suit.

that they are barred from exercising their right to institute an independent suit in equity to set aside the decree.

On appeal, defendants argue that plaintiffs are not entitled to have the decree of foreclosure set aside by a suit in equity because their complaint fails to allege any fraud on the part of defendants. The Supreme Court set forth the criteria for instituting such a suit in *Mattoon v. Cole, supra:*

> "* * * This court in *Ralston v. Bennett,* 93 Or 519, 183 P 766, quoted with approval from 2 Freeman on Judgments, Second Edition, § 486, the following:
>
> " 'A court of equity will not lend its aid unless the party claiming its assistance can impeach the judgment by facts or on grounds of which he could not have availed himself at law, or was prevented from doing it by fraud or accident or the act of the opposite party, unmixed with negligence or fraud on his own part. When a party has once an opportunity of being heard, and neglects to do so, he must abide the consequences of his neglect. A court of equity can not relieve him, though the judgment is manifestly wrong.
>
> "The term 'fraud' as used in the foregoing quotation 'means the perpetration of an intentional wrong, or the breach of a duty growing out of a fiduciary relation. To obtain relief on this ground, it is necessary that the fraud charged should be clearly stated and proved, and it must be shown that the fraud was practiced or participated in by the judgment creditor; that it was actually effective in bringing about the judgment which was rendered': *Bowsman v. Anderson,* 62 Or. 431, 440, 123 P. 1092, 125 P. 270.
>
> "The grounds on which equitable relief from a judgment will be granted are thus set out in Restatement of the Law of Judgments, § 121:
>
> " 'Subject to general equitable considerations (see §§ 127-130), equitable relief from a valid judgment will be granted to a party to the action injured thereby if the judgment was based upon a fraudulent claim or defense which he did not contest because he was
>
> " '(a) fraudulently misled by the other party to the action to believe that he had no claim or defense, or
>
> " '(b) prevented by duress from contesting it.' " 172 Or at 670-71.

■ Plaintiffs have not alleged fraud or duress. Nonetheless, we believe it would be inappropriate to affirm the summary judgment in favor of defendants for that reason.

Defendants' motion for summary judgment was made solely in reliance on the applicability of *res judicata.* Plaintiffs were never given an opportunity to respond to the objection defendants now raise. It is well settled that a party may not raise the inadequacy of pleadings for the first time on appeal. *State ex rel Dept. of Trans. v. Glenn,* 35 Or App 413, 582 P2d 432 (1978), *affirmed as modified* 288 Or 17, 602 P2d 253 (1979). It may be that plaintiffs' complaint in its present form is susceptible to attack by a motion to strike, a motion to make more definite and certain, or a motion to dismiss for failure to state ultimate facts sufficient to constitute a claim. *See generally,* ORCP 21. In that event, plaintiffs would have the opportunity to amend their complaint, and, thereafter, on a motion for summary judgment, they could attempt to show by affidavits and other sworn documents that there is a genuine issue as to the fact of fraud or duress.

For their second cause of suit, plaintiffs allege that defendants breached the joint venture contract by suing on the $35,000 note and foreclosing the mortgage. Plaintiffs allege that, under the contract, the note would not become due and payable if they obtained all permits necessary to operate the landfill within one year. They claim this was done. They pray for an order granting rescission of the sheriff's sale, setting aside the default decree, and granting specific performance of the joint venture agreement.

Defendants moved for summary judgment as to this cause on the basis of *res judicata* also. When the elements of *res judicata* are present,

> "* * * the judgment in the first suit not only bars all matters actually determined therein, but also every other matter which might have been litigated and decided as incident to or essentially connected therewith, either as a claim or a defense. [Citation omitted.]
>
> "* * * * *
>
> " "* * * A party cannot split up his defenses, and present them by piecemeal in successive suits arising out of the same transaction, nor can he relitigate matters which he might have interposed, but failed to do, in a prior action between the same parties about the same subject-matter; and this rule holds true whether the matter that might have been litigated in the former trial would have been

therein a ground of action or a defense to the action then pending * * *.' *Bierer v. Fretz,* 37 Kan 27, 30, 14 P 558 (1887)." *Jarvy v. Mowrey,* 235 Or 579, 582-84, 385 P2d 336 (1963).

■     Assuming plaintiffs' second cause of suit is a claim which could have been asserted in the foreclosure proceeding, we cannot rule it is barred. If plaintiffs are successful in their attempts to vacate the decree of foreclosure, that decree will no longer be a former adjudication for purposes of *res judicata.*

We find it unnecessary to address plaintiffs' third and fourth "causes of suit" since they raise no new issues. The above analysis applies to them as well.

The judgment entered in favor of defendants is reversed.

Reversed and remanded.